## SOUTHERN ICE AND COAL COMPANY *v.* ATLANTIC ICE AND COAL CORPORATION.

1. The superior court has no jurisdiction to make or regulate the price of a commodity made and sold in this State by a manufacturing corporation.
2. There being no prayer for specific relief other than the fixing of minimum prices below which the defendant could not sell, the court did not err in sustaining the demurrer and dismissing the petition.

AUGUST 13, 1915.

Equitable petition. Before Judge Mathews. Bibb superior court. April 1, 1914.

The Southern Ice and Coal Company brought a petition against the Atlantic Coal and Ice Corporation, alleging in substance as follows: The plaintiff is a Georgia corporation, with a capital stock of $150,000. The defendant corporation was created and organized under the laws of Virginia, with a capital stock of $7,-000,000. The defendant owns and operates factories for manufacturing and selling ice in Macon, Bibb county, and in many other cities in Georgia, Florida, and Tennessee, and the plaintiff is the

only competitor of the defendant in Macon, Georgia. The defendant corporation was organized and chartered for the purpose of controlling as a monopoly the manufacture and sale of ice in cities and States where it should thereafter own and operate or control factories, or carry on business, and to prevent and impede free and fair competition in trade between itself and owners of ice factories in all the cities and States where it owns and creates or controls ice factories or does business, and with this purpose has taken over and obtained control of many ice factories in the States where it operates. The defendant now consists of a combination and union of the ice factories originally built, owned, and operated by it, and of former independent ice factories, all of which are now operated under the charter of the defendant, which combination is illegal and contrary to the laws of Georgia and par. 4 of sec. 2 of art. 4 of the constitution of this State. The defendant has never built an ice factory except for the purpose of carrying out the scheme of creating a monopoly to prevent free and fair competition in trade between itself and owners of independent ice factories, except in Fort Valley, Ga., where it built a small plant for the purpose of assisting in carrying out its contract with the Armour car lines in the refrigeration of cars for the shipment of fruit. For the purpose of creating a monopoly and for the purpose of defeating fair and honest competition and increasing the price of ice, the defendant forced all of the former independent ice factories either to sell to it, or to combine with it and operate under its charter, thus forming the combination, union, and monopoly, all of which tends to defeat and does defeat free and fair competition and results in the monopoly planned by the defendant. For the purpose of further defeating free and fair competition and of controlling the sale and price of ice, the defendant entered into an illegal contract and combination with the Southern Ice Company, a corporation of Nashville, Tenn., the stockholders of the defendant being also large stockholders of the Southern Ice Company. The general scheme of carrying out its purpose was that the defendant would take over and combine with more than one independent factory, with the understanding and agreement between itself and the Southern Ice Company that they would nominally appear as competitors, but in fact would and did agree among themselves to maintain a fixed scale of prices for the sale of ice, and in this way

defeat free and fair competition. This scheme was carried out in a number of cities of Georgia and Florida. From the organization of the plaintiff company the defendant set out to drive it out of business and carry on the monopoly for the sale of ice in Macon and in other territory in which the plaintiff now does business, and by threats, intimidations, and other unlawful means, and by reason of the formation of a monopoly, has a scheme to prevent plaintiff from engaging in or remaining in or carrying on business. Immediately upon the commencement of the sale of ice by the plaintiff the defendant reduced the price of ice to the principal users in Macon from $5.00 to 4.50 per ton, and from time to time thereafter the defendant has reduced the price of ice on wholesale and retail quantities, and is now threatening to reduce the price lower, for the purpose of driving plaintiff out of business, and for the purpose of then increasing to an unreasonable rate the price of ice in Macon and the territory in which the plaintiff and defendant compete. The difference in the price of ice at the scale of prices for which ice was sold by the defendant company immediately and for many years before the plaintiff entered business and the prices of ice at the scale of prices now in effect amounts to $150 to $187.50 per day to plaintiff; although the cost of the manufacture of ice, by reason of the increase in the price of labor and increase in the water-rates, and for other causes, is considerably greater than was the cost of its manufacture for many years before the plaintiff entered into business; and the selling price has been from time to time reduced since the defendant entered business, for the purpose of driving defendant out of business and creating a monopoly. In other cities where defendant owns and operates the only ice factory, and where there is no competition, the defendant charges and receives a much higher price for ice, both wholesale and retail, although in such cities freight rates on coal are comparatively much lower than in Macon, in proportion to the price of ice, the item of coal being the largest expense in the manufacture of ice. All the unlawful means practiced by the defendant to prevent the plaintiff from enjoying, remaining in, or carrying on business at a fair and legitimate profit are in restraint of trade, prevent fair competition, and create a monopoly, and are illegal and contrary to the principles of equity and good conscience. Ice is one of the necessaries of life; the injury that has been in-

flicted by defendant's means and methods is irreparable in damages; and the plaintiff has no adequate remedy at law for the correction of the injury inflicted. It prays for temporary and permanent injunction to restrain the defendant from further reducing or cutting the price of ice, either in wholesale or retail quantities, or from selling or offering for sale ice in such quantities at a rate less than that at which it is now offering ice for sale in the city of Macon and Bibb county, and in any territory in which the plaintiff and the defendant are competitors, and to compel defendant to offer ice for sale in the city of Macon, Bibb county and territory, at such prices as will allow both plaintiff and defendant a fair and legitimate profit; and that the defendant be enjoined from selling ice in Macon and the territory supplied from Macon at a schedule of prices below the cost of manufacturing and delivering it.

The defendant filed a general demurrer to the petition, which was sustained, and the plaintiff excepted.

*J. E. Hall* and *Guyton Parks,* for plaintiff.

*Payne & Jones* and *Miller & Jones,* for defendant.

HILL, J. (After stating the foregoing facts.) By the allegations of the petition a strong case is made out prima facie, tending to show an illegal combination and conspiracy between the defendant company and a similar one outside the State, the purpose of which, by reducing the selling price of ice in the territory covered by the plaintiff, below the cost of manufacture and delivery, was to drive the plaintiff from the territory now occupied by it and the defendant, and then to raise the price of ice unreasonably high and have a monopoly of the business of manufacturing and selling it in that territory. It is alleged that the defendant company is a corporation with $7,000,000 capital, and that the plaintiff is capitalized at only $150,000. The acts complained of are, briefly stated, that the defendant corporation has: (1) Bought and obtained control of various independent ice factories previously owned by individuals and independent corporations in Georgia, Florida, and Tennessee, for the purpose of defeating and lessening competition. (2) Entered into an illegal combination and contract with the Southern Ice Company of Nashville, Tenn., for the same purpose. (3) Intimidated the customers of the plaintiff by refusing to sell them ice when the plaintiff was out of business, if they bought ice from the plaintiff. (4) Reduced the price of ice in the city of

Macon, where the plaintiff's factory is located, below the cost of production. It is alleged that these acts on the part of the defendant company will cause irreparable damage to the plaintiff, which is incapable of estimation. The plaintiff's prayer is for injunction to prevent the defendant from further reducing the price of ice below the cost of manufacturing and delivering it; but there is no prayer for injunction against the illegal combination or conspiracy alleged to exist and to be in restraint of trade.

The demurrer raises the question of the jurisdiction of the court to determine a question like the one at bar. It will be observed that the relief sought is not to break up or set aside the alleged illegal combination and conspiracy; and hence we will not discuss that phase of the case, but we address ourselves to the question directly made by the petition and demurrer. Can the superior court, on a hearing of this kind, fix the prices at which ice may be sold, and put a limitation on the price below which the defendant can not sell? Would it be within the power of the superior court, assuming all of the allegations of the petition to be true, to grant a perpetual injunction forbidding the defendant from ever selling ice below a schedule of prices now fixed by it? We know of no such power vested in the superior court. If such a judgment as prayed (permanent injunction) should be rendered, it would be a final judgment, and there could be no modification of that judgment, without trouble and delay at least, to meet the changing conditions surrounding the manufacture and sale of ice, and to meet the market conditions which affect the price of commodities required to produce the article manufactured and sold. The price below which the defendant could not sell would become fixed by judgment of the court, and it could not easily be changed, if at all, to meet the varying conditions of trade. It is insisted by the plaintiff that there is no allegation or prayer for the fixing of rates, but that the prayer is for an injunction to prevent the defendant from cutting the price of ice to a rate less than the cost of production, etc. But we think that the grant of the prayer of the plaintiff would in effect be the fixing of a minimum rate or price below which the defendant could not sell; and if the court could name the minimum, it could as well name the maximum—a power which we think the superior court does not possess. It is true that in cases where rate-making bodies, or the legislature, have fixed rates

for certain public-service corporations, the courts may say whether a given rate is just and reasonable, or confiscatory, or remunerative, and the like, within the meaning of the law; but that class of cases, where the court has jurisdiction, is very different from one where it is sought, in effect, to confer on the superior court a right *primarily* to fix and regulate prices of commodities of private corporations, without express constitutional authority to do so. There is no authority of which we are aware which confers such power or jurisdiction upon the superior court, either as a court of law or in the exercise of its equity jurisdiction. The legislature of this State, by virtue of the authority vested in it expressly by the constitution, has created a commission in the nature of a public-service commission, and has conferred on it the right to make just and reasonable railroad and certain other rates, which may be revised from time to time as conditions necessitate (Civil Code, §§ 2615 et seq.); but those powers have not as yet been extended by the legislature to any tribunal so as to include a corporation like the present, or on the superior courts to fix and regulate the price at which such corporations may sell the products of their factories.

The case of *Brown* v. *Jacobs Pharmacy Co.,* 115 *Ga.* 429 (41 S. E. 553, 57 L. R. A. 547, 90 Am. St. R. 126), cited by the plaintiff, is different in its facts from the present. In that case this court held that a combination of merchants to compel another dealing in similar kinds of merchandise to sell at prices fixed by them, or, upon his refusal to do so, to prevent those of whom its members were purchasing customers from selling to him, was contrary to public policy and void. But the allegations and prayers in that case are different from those in the present.

Basing our decision upon the lack of authority on the part of the superior court to make rates or prices below which a manufacturer of ice can not sell, we think the court below properly sustained the demurrer and dismissed the petition.

*Judgment affirmed. All the Justices concur.*