[No. 15022.  Department One.  December 6, 1918.]

THE STATE OF WASHINGTON, *on the Relation of Chas. H. Lilly Company, Plaintiff,* v. AUGUSTUS BRAWLEY, *Judge, etc., Respondent.*[1]

CERTIORARI (3)—REMEDY BY APPEAL. Certiorari does not lie to review or supersede an order vacating or refusing a temporary restraining order where there was no finding of insolvency, since appeal from such an order is expressly forbidden by Rem. Code, § 1716.

SAME (3, 4)—ADEQUACY OF REMEDY BY APPEAL. Upon breach of a contract to sell seed of special quality to a seed company, the damage which may result from the seed's being marketed by others is incidental only to the loss of profit, and too remote to call into action the extraordinary writ of certiorari to secure injunctive relief, in the absence of a finding of insolvency of the defendant.

Application filed in the supreme court September 24, 1918, for a writ of certiorari to review an order of the superior court for Skagit county, Brawley, J., dissolving a temporary injunction, and for an order of supersedeas. Denied.

*A. R. Hilen* and *Grinstead & Laube,* for relator.
*Hans Bugge* and *Thomas Smith,* for respondent.

TOLMAN, J.—The relator, on the 11th day of September, 1918, commenced an action in the superior court of the state of Washington for Skagit county, entitled, The Chas. H. Lilly Company, a corporation, plaintiff, v. Lars Johnson and Harold Knudson, defendants, being cause No. 8959 of the records of said court, filing upon that day its complaint, in which, among other things, it alleged:

"(2) That the plaintiff now is, and for many years last past has been, engaged in procuring the raising

[1]Reported in 176 Pac. 337.

of seeds of various kinds, to be marketed in appropriate markets over the entire markets of the United States, to be used for the purpose of seeding lands for the raising of crops; that, for said purpose, plaintiff, for many years last past, has been engaged in procuring areas of land suitable for the raising of different varieties of seeds for such purpose, and, in particular, in Skagit county, has procured land suitable for the raising of cabbage seeds of different varieties, including the 'All Season' variety for such purposes. That plaintiff's seeds have acquired a wide reputation throughout the United States for their purity, uniformity and vitality for seed purposes. That such reputation has been acquired only by diligent effort in the raising, or the procuring of the raising, of good, pure, vital seeds.

"That the contract of March 15, 1917, and its subsequent amendment as hereinafter pleaded, was made and entered into by the plaintiff pursuant to its custom and purpose as hereinafter set forth, all of which is and at all times hereinafter mentioned was known to the defendants and each of them.

"That pursuant to said purpose, for the protection of plaintiff's reputation, trade-name and good will in such pure seeds as was developed over a period of years, it is and has been necessary, fair and equitable, that the seeds raised from seed furnished by said Chas. H. Lilly Co. should be distributed and distributable only by plaintiff, all of which is, and at all times hereinafter mentioned was, known to defendants herein. That for the protection of such necessary, fair and equitable purposes, said agreement of March 15, 1917, as amended, provided that the defendant Lars Johnson should raise seed of the above named variety on said defendant's land for no other person than plaintiff, and said defendant Lars Johnson therein agreed to plant and raise such seed exclusively for plaintiff.

"(3) That defendant Lars Johnson now is, and at all times hereinafter mentioned was, occupying and in possession of a certain tract of agricultural land in Skagit county lying in the vicinity of Telegraph and

Swinomish Sloughs, the exact legal description of said tract of land being to plaintiff unknown.

"(4) That, on or about the 15th day of March, 1917, plaintiff and the defendant Lars Johnson, in consideration of all the mutual obligations therefrom arising, made and entered into a certain agreement in writing, a copy of which is attached hereto, marked Exhibit 'A,' and hereby made a part hereof.

"(5) That, on or about the 7th day of May, 1917, the plaintiff and the defendant Lars Johnson, in consideration of all the mutual advantages and obligations to arise therefrom, amended said agreement of March 15, 1917, by certain writings, copies of which are attached hereto and marked respectively exhibits 'B' and 'C,' and hereby made a part hereof.

"(6) That in conformance with the obligations of said agreement as amended, plaintiff furnished seed sufficient, and in excess of actual necessary requirements, to said Lars Johnson to plant an area of 25 acres or more; that such seed was placed in the ground and cultivated in accordance with said agreement. As plaintiff is informed and believes, the total area planted with said seed on said farm was in excess of 30 acres or more; that as plaintiff is informed and believes, by the said defendant Lars Johnson, all of the cabbage seed planted by said defendant on said farm since the date of such contract was seed furnished by plaintiff under the terms of said agreement as amended.

"(7) That the crop of cabbage seed raised and matured under and pursuant to said agreement has now been harvested and is now in possession of defendant Lars Johnson. That the amount of said seed so harvested and in possession of said defendant is to plaintiff unknown, but plaintiff is informed and believes it is in the approximate amount of 12,000 pounds.

"(8) That, relying upon said agreement with defendant Lars Johnson, plaintiff entered into contracts selling all of said seed to be raised under the agreement hereinbefore referred to and is now obligated to deliver said seed to the purchasers under such agreements, said contracts having been made at the time

when the market price of said seed was approximately the same as existed at the time of making the agreement with Lars Johnson hereinbefore referred to.

"That the defendant Lars Johnson has notified plaintiff that he refuses, and will continue to refuse, to deliver to plaintiff all of the seed so raised under said agreement, and that he intends to retain said seed for the purpose of disposing of the same to other parties than plaintiff.

"That, in such event, plaintiff will be unable to obtain similar or seed of the same variety, purity, quality and vitality as the seed so raised under said agreement, and thereby will be unable to fulfill and perform its obligations to deliver such seed to other parties as hereinabove set forth, and by reason thereof will sustain irreparable and lasting damage under said agreements and to its reputation and business as hereinbefore described."

And further alleged that the defendant Harold Knudson claims and asserts an interest in said crop of seed the exact nature of which is to the plaintiff unknown, and praying for an order restraining and enjoining the defendants, and each of them, from marketing and disposing of said crop of seed, for a final decree requiring the defendants to deliver the said crop and the whole thereof to the plaintiff under the terms of its said agreement, and for general relief.

Upon the filing of the complaint, the relator, as plaintiff in said cause, procured a temporary restraining order to issue directed to both of said defendants, returnable on September 18, 1918. On the last named date, the cause came on for hearing before the respondent, as judge of said superior court, upon the order to show cause why said restraining order should not continue in full force and effect pending the litigation, and the defendants, after having moved to strike from the complaint, which motions were denied, and after having demurred to the complaint, which demurrers

were overruled, answered; and the defendant Knudson, after appropriate denials, alleged in his answer that,

"Long subsequent to the month of March, 1917, that he leased to one Lars Johnson twenty acres of land upon the express understanding and agreement that he was to plant the same to cabbage for the purpose of raising cabbage seed, and that he was to care for, look after, harvest and thresh the crop and to deliver to him at the time of threshing one-half of all the seed sown, grown, raised, harvested and threshed from said land, and in pursuance of said agreement the said Johnson entered onto a twenty-acre tract of land belonging to this defendant, and during the spring of 1917 planted the same to cabbage plants and cared for the same for said year and the succeeding year of 1918, and that he harvested and threshed the said crop and delivered to this defendant one-half of the cabbage seed so grown and raised, at the time of threshing thereof, as rental for said premises, and he now has said share of said cabbage seed in his possession and owns the same, and he denies each and every other allegation not herein admitted, alleged and set forth in said paragraph 10."

After the answers were filed, the hearing proceeded, and the plaintiff therein offered certain affidavits and oral testimony tending to establish the allegations of its complaint, and called as a witness the defendant Harold Knudson, whose testimony was consistent with that portion of his answer which has been quoted. The respondent judge thereupon announced his decision that the restraining order, as to the defendant Knudson, would be dissolved. Whereupon the plaintiff asked that the order dissolving the injunction as to the defendant Knudson should be superseded for a sufficient time to permit the plaintiff to apply to this court for the purpose of reviewing such ruling, and accordingly the relator has applied for a writ of review and an order of supersedeas.

The respondent, in his return, sets up that there is no allegation in the original complaint of the relator alleging that the defendants in the original action, or either of them, are insolvent, or in imminent danger of becoming insolvent, and that no testimony was offered by the relator in the original action to the effect that the defendants, or either of them, were insolvent, or in imminent danger of becoming insolvent, and that the respondent, as judge of said court, was not requested to make any finding regarding the solvency or insolvency of said defendants, or either of them, in the proceeding referred to.

The statute, Rem. Code, § 1716, provides:

"Any party aggrieved may appeal to the supreme court in the mode prescribed in this title from any and every of the following determinations, and no others, made by the superior court, or a judge thereof, in any action or proceeding.

"(3) From an order granting or denying a motion for a temporary injunction, heard upon notice to the adverse party, and from any order vacating or refusing to vacate a temporary injunction: Provided, that no appeal shall be allowed from any order denying a motion for a temporary injunction, or vacating a temporary injunction unless the judge of the superior court shall have found upon the hearing, that the party against whom the injunction was sought was insolvent."

The relator relies upon the case of *State ex rel. Davis & Co. v. Superior Court*, 95 Wash. 258, 163 Pac. 765, in which case it appeared that the relator had commenced an action in the superior court against Vincent D. Miller and Vincent D. Miller, Incorporated, and others, seeking injunctive relief forbidding them from soliciting business from customers or clients of the relator, and from making use against the relator of any confidential information gained by them (not

including the corporation) while connected with the relator in confidential capacities. In that case the lower court denied a temporary injunction, and found that the corporation defendant was insolvent, but refused to pass upon the question of the solvency of the individual defendants, although having expressed orally the opinion that they, or the principal ones, were in fact insolvent. In that case the relator sought a review by this court of the issue of insolvency, and an order of supersedeas pending the trial upon the merits, and, since the facts clearly showed insolvency, this court entertained jurisdiction, found the insolvency, and issued the order of supersedeas, being impelled thereto, no doubt, by the facts in that case, which showed that the principal defendants, other than the corporation, had been confidential employees of the relator, knew all of its business and customers, its methods of doing business, and the matters shown upon its books, and had severed their relations with the relator, organized a corporation, and proceeded to solicit the business of the relator's customers. Manifestly, the defendants being insolvent, if the solicitation were permitted to continue and the defendants enticed away the relator's customers, no adequate remedy would remain to the relator if he prevailed upon the merits in the original action. We think this case may be readily distinguished upon the facts from the *Davis* case. First, there was in this case no allegation of insolvency, and no proof thereof, so that, under the statute, an appeal is directly and positively forbidden, and relator is attempting to obtain appellate relief by this proceeding, thus avoiding the force of the statute; while in the *Davis* case, the right of appeal in fact existed, but was not available to the relator because of the error of the trial court in refusing to

find insolvency. Second, in the *Davis* case, that which was being taken away from the relator could not be readily measured by money value, while in this case the matter in controversy, stripped of all surplusage, is simply and solely a quantity of cabbage seed, which is a commercial commodity and has a market value, and which the relator is trying to recover in the original action for the purpose of selling and delivering it to its customers. Manifestly, therefore, if it should prevail upon the merits as against the defendant Knudson, and he should fail, refuse or be unable to deliver the commodity in question, the value thereof could be readily ascertained from the market price and a judgment be entered accordingly. And since there is no allegation, proof or suggestion of insolvency upon the part of the defendant Knudson, it is to be presumed that the judgment would be collectible.

This court has uniformly held that an extraordinary writ will not issue to review or supersede an order denying a temporary injunction, which by statute is not appealable, unless there is a finding of insolvency, because the legislative intent is that such orders shall be reviewed only on appeal from the final judgment. *State ex rel. Young v. Superior Court,* 43 Wash. 34, 85 Pac. 989; *State ex rel. Mohr v. Superior Court,* 54 Wash. 225, 103 Pac. 17; *State ex rel. Coombs v. Superior Court,* 69 Wash. 439, 125 Pac. 779.

Nor do we think that the allegations of relator's complaint with reference to the time it has been in business, the methods it has employed to establish a reputation for its product, or the fact that these seeds may reach the market without passing through its hands, in any way change the gist of the action. The damage, if any, which may result to relator from these seeds being marketed by others than itself, aside from

the loss of its profit in handling the seed, would be incidental only, and too remote to call into action the extraordinary writ which is here sought.

Writ denied.

PARKER, MACKINTOSH, CHADWICK, and FULLERTON, JJ., concur.