[No. 24788. *En Banc.* January 22, 1934.]

THE STATE OF WASHINGTON, *on the Relation of G. W. Hamilton, as Attorney General, Appellant,* v. STANDARD OIL COMPANY OF CALIFORNIA *et al., Respondents.*[1]

[1]Reported in 28 P. (2d) 790.

*The Attorney General* and *William H. Pemberton, Special Assistant,* for appellant.

*Battle, Hulbert & Helsell, Bogle, Bogle & Gates, Ray Dumett, Eggerman & Rosling, Meier & Meagher, J. S. Robinson,* and *Hyland, Elvidge & Alvord,* for respondents Standard Oil Co. *et al.*

*Allen, Froude, Hilen & Askren,* for respondent Gilmore Oil Co., Ltd.

*Stratton & Kane,* for respondent Union Oil Co.

*Grosscup & Morrow,* for respondent Texas Co.

BEALS, C. J.—This proceeding, which is in the nature of *quo warranto,* was instituted by the state of Washington, on the relation of its *Attorney General,* against a number of corporations, all authorized to engage in business within this state, each of the defendants being operating as a refiner of petroleum and a dealer in petroleum products. The original complaint was filed July 25, 1933, together with an application for the appointment of a temporary receiver, upon which an order to show cause was issued.

September 5, an amended complaint was filed, in which it was alleged that defendants comprise all of the major dealers in petroleum products in the state of Washington; that, during the year 1932, defendants entered into a pooling or trust agreement or conspiracy for the purpose of regulating and controlling the prices to be paid in the state of Washington by retail

dealers and others in petroleum products, and for the purpose of limiting competition in the business of buying and selling such products. The amended complaint further alleged that a similar agreement or conspiracy had existed between defendants for more than three years prior to 1932, and that, pursuant to such combination, the prices of gasoline, kerosene, lubricating and other oils, had been maintained at an unreasonably high figure, and that competition in the purchase and sale of such products had been prevented because there had been no actual competition between defendants, who had acted in concert although apparently in competition, to the damage and detriment of the people of the state.

It was also alleged that defendants had indulged in false advertising, and had at times, in order to stifle competition, sold their products at unreasonably low prices, thereby causing others not within their pooling agreement to withdraw from business. The arbitrary fixing of prices without any regard to supply or demand or the cost of production was also alleged, as was the disregard by defendants of the laws controlling the weighing and measuring of petroleum products. The amended complaint contained other allegations of similar tenor, and finally alleged that the appointment of a temporary receiver to take charge of all of the properties of defendants was necessary.

The prayer was for a decree forfeiting the corporate franchises of defendants whereby they are authorized to engage in business in the state of Washington, dissolving such of said defendants as are incorporated under the laws of this state and directing that their properties be sold, and that, until the provisions of the decree should be fully accomplished, defendants be operated under a decree of the superior court. It was further prayed that defendants be enjoined from con-

tinuing their pooling or trust agreement or from con-
spiring to control the price of gasoline and similar
products. The appointment of a temporary receiver
for each of defendants was demanded, to be followed
by the appointment of a permanent receiver upon entry
of the decree.

There was filed with the amended complaint an
"amended bill for restraining order," whereby plain-
tiff prayed that an order be entered restraining de-
fendants from fixing the price of gasoline sold by them
to distributors in the state of Washington at more than
certain prices to be specified, and that they be re-
strained from selling gasoline at retail from service
stations controlled by them at over sixteen cents a
gallon. Plaintiff also prayed that, in case the appoint-
ment of a temporary receiver and its application for a
restraining order be denied, the court impound, pend-
ing the entry of final decree herein, a certain propor-
tion of the moneys received by defendants from the
public at large for the purchase of gasoline and similar
products.

Defendants responded to the bill for a restraining
order by motions to quash or motions to dismiss. The
matter came on regularly to be heard before the su-
perior court September 5, and after a hearing which
lasted that day and the next, the court denied all tem-
porary relief prayed for by plaintiff, and September 8
entered a formal order to that effect, from which order
plaintiff has appealed to this court.

From the statement of facts, it appears that a hear-
ing was held August 7 upon the order issued on appel-
lant's motion, requiring respondents to show cause
why a temporary receiver should not be appointed to
take possession of their properties, and that respond-
ents then applied for a continuance. It also appears
that, at the close of this hearing, the trial court ex-

pressed the opinion that the case could and should be heard on the merits within a reasonable time, and that the court doubted its power or jurisdiction to appoint a temporary receiver pending trial. At the close of the arguments, the court indicated that appellant's application for the appointment of a temporary receiver was denied.

The matter again came on for hearing September 5 upon appellant's bill for a restraining order, in support of which appellant had filed a showing by way of affidavits and exhibits. After argument of counsel, the court again expressed the opinion that the matter should proceed to a trial on the merits, and denied appellant any temporary relief by way of the appointment of a receiver, the issuance of a restraining order, or a decree requiring the impounding of any funds pending trial. The action of the trial court, therefore, now before us for review concerns only the denial by that court to appellant of any relief *pendente lite,* and has nothing to do with the merits of the cause.

In waging this action, appellant relies upon § 22 of Article XII of the state constitution, forbidding monopolies and trusts, and upon Rem. Rev. Stat., §§ 2382 and 2384, the first of the two sections forbidding conspiracies and the latter reading as follows:

"Every corporation, whether foreign or domestic, which shall violate any provision of section 2382, shall forfeit every right and franchise to do business in this state. The attorney general shall begin and conduct all actions and proceedings necessary to enforce the provisions of this section." Rem. Rev. Stat., § 2384.

Rem. Rev. Stat., § 741, provides for the appointment of receivers, appellant relying upon the following paragraphs thereof:

"(3) In all actions where it is shown that the property, fund, or rents and profits in controversy are in

danger of being lost, removed or materially injured;

"(5) When a corporation has been dissolved or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights;

"(6) And in such other cases as may be provided for by law, or when, in the discretion of the court, it may be necessary to secure ample justice to the parties: *Provided,* That no party or attorney or other person interested in an action shall be appointed receiver therein."

Appellant, in applying for a temporary restraining order, relies upon Rem. Rev. Stat., § 718 *et seq.,* particularly upon § 719, which reads as follows:

"When it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of some act the commission or continuance of which during the litigation would produce great injury to the plaintiff; or when, during the litigation, it appears that the defendant is doing, or threatens [threatened], or is about to do, or is procuring, or is suffering some act to be done, in violation of the plaintiff's rights respecting the subject of the action, tending to render the judgment ineffectual; or where such relief, or any part thereof consists in restraining proceedings upon any final order or judgment,—an injunction may be granted to restrain such act or proceedings until the further order of the court, which may afterwards be dissolved or modified upon motion."

Section 722 provides for the issuance of a restraining order without notice in cases of emergency, while § 723 provides for the hearing of the application for an injunction upon affidavits.

It is undoubtedly the law that, in proper cases, a court of general jurisdiction may impound funds and hold them in its registry until the entry of a decree determining the title thereto.

The filing of informations in the nature of *quo war-ranto* is provided for in Rem. Rev. Stat., § 1034 *et seq.*, § 1043 providing for the entry of a judgment of ouster or forfeiture when a defendant shall be found guilty of "usurpation of or intrusion into or unlawfully exercising any office or franchise within this state, . . ." The following section provides for the entry of judgment against a corporation and for the appointment of a receiver therefor.

■ In its brief, appellant concedes that a corporation might be guilty of such unlawful conduct as would subject its franchise to forfeiture, and that, notwithstanding this situation, in a proceeding instituted in the name of the state upon the relation of the *Attorney General,* as here, to forfeit the corporate franchise, a receiver should not be appointed for the corporation until after a hearing on the merits, unless the interests of the public are injuriously affected. Counsel for appellant seeks to differentiate this case from the case which he supposes, contending that this action is based upon an unlawful conspiracy, that a very large amount of money is involved, and that appellant's application for temporary or emergent relief shows a condition which requires the exercise by a court of equity of its extraordinary powers.

In this connection, appellant relies upon the opinion of the supreme court of Missouri in the case of *State ex rel. Barker v. Assurance Co. of America,* 251 Mo. 278, 158 S. W. 640, Ann. Cas. 1915A, 247, 46 L. R. A. (N. S.) 955. That was a proceeding by way of *quo warranto* filed by the state in the supreme court, it appearing that the defendant insurance companies proposed to discontinue the writing of insurance in the state of Missouri and to cancel policies which they had already written in favor of residents of that state.

Upon institution by the *Attorney General* of a proceeding by way of an information in the nature of *quo warranto,* alleging a conspiracy and asking that the insurance companies be restrained *pendente lite* from ceasing to do business in Missouri and from canceling policies of insurance which they had theretofore issued, the issue of law presented on defendants' demurrer being argued, the supreme court entered an interlocutory order maintaining the *status quo* until the proceeding could be heard and determined on the merits. In that case, an interlocutory order was necessary to preserve the *status quo,* otherwise the entire fruits of the litigation might well be lost, even though the final decree should be in favor of the relator. The case cited presents a question entirely different from that now before us.

Appellant also cites certain texts from Fletcher Cyclopedia Corporations. We have read the texts cited, but find therein no authority which calls for a reversal of the order now before us for review.

In the case of *State ex rel. Amsterdamsch Trustees Kantoor v. Superior Court,* 15 Wash. 668, 47 Pac. 31, 55 Am. St. 907, 37 L. R. A. 111, a proceeding instituted under the law then in force by way of an information in the nature of *quo warranto* filed by the prosecuting attorney for Spokane county, for the purpose of obtaining a decree to the effect that the defendant was unlawfully exercising corporate powers, the appointment of a receiver was asked for, and upon the filing of the information the superior court appointed a temporary receiver. On review, it was held that the superior court had no right or power to appoint a receiver before trial or before the entry of judgment in favor of relator. In the course of its opinion, the court said:

"As justifying the action of the superior court, the respondent relies on subdivisions 3 and 5 of Sec. 326, of the Code of Procedure. But, in our opinion, those provisions are inapplicable here, for the reason that there is a special provision of the code with reference to the appointment of receivers in actions like that in which this receiver was appointed, by which the courts should be governed. We refer to § 689, which is as follows:

" 'If judgment be rendered against any corporation, or against any persons claiming to be a corporation, the court may cause the costs to be collected by executions against the persons claiming to be a corporation, or by attachment against the directors or other officers of the corporation, and shall restrain the corporation, appoint a receiver of its property and effects, take an account and make a distribution thereof among the creditors. The prosecuting attorney shall immediately institute proceedings for that purpose.'

"And it would seem reasonably plain from this provision that the superior court had no right or power to appoint a receiver before trial and judgment in the action instituted on behalf of the state. The sole object of the action was to dissolve an alleged corporation, or at least, to exclude the defendants from corporate rights and franchises, and no judgment could be rendered therein except that prescribed by § 688 of the code. The state had no interest or right whatever in or to the property of the defendants, and the court had no authority, under the general provisions of the statute referred to by the respondent, or by virtue of any supposed equity power vested in it, to take property from the possession of the defendants, or either of them, and place it in the hands and under the control of a receiver. After such a judgment has been rendered against the defendants as is provided for by § 688, proceedings may be instituted by the prosecuting attorney by virtue of § 689, in which it may be proper to appoint a receiver to take an account and distribute the property of the alleged corporation among its creditors, if any it may have. But, pending the action in the superior court, the defendants, so far as the state

is concerned, have the same right to possess and manage their property that they had before the institution of the suit against them by the prosecuting attorney. 'Property rights cannot be confiscated by the state' in such an action as is now being waged in the superior court. 2 Morawetz, Private Corporations (2d ed.), § 1033.

"Nor, on the same principle, can such rights be sus-pended or interfered with except by express authority of law, and therefore the point made by the respondent that the superior court at least had power to appoint a receiver temporarily cannot be sustained."

In the case of *Conlan v. Oudin*, 49 Wash. 240, 94 Pac. 1074, this court, referring to the matter of the appointment of a receiver to take charge of the assets of a dissolved corporation, said:

"The principal thing to be accomplished is the appointment of a receiver to act somewhat in the capacity of an administrator for the corporate estate when the property has been left without an authorized custodian and manager."

In the case of *Kahan v. Alaska Junk Co.*, 111 Wash. 39, 189 Pac. 262, 10 A. L. R. 151, this court, referring to the matter of the appointment of a receiver for a corporation which was neither insolvent nor in danger of insolvency but which was accused of dishonest acts, discusses the matter of the appointment of such a receiver and calls attention to the principle that, in such a case, the court should be slow to put into operation such a drastic remedy.

In 41 C. J. 209, § 268, title, Monopolies, the author of the text calls attention to the principle that, in the absence of statutory authority, the court has no power to appoint a receiver for the property of a corporation whose charter has been forfeited in *quo warranto* proceedings, but that, where the statute so provides, a re-

ceiver may be appointed in case a corporation has been dissolved or has forfeited its corporate rights.

In 7 R. C. L. 734, the rule is laid down as follows:

"The judgment of seizure of the franchises of the corporation should not direct that real or personal property of the corporation be seized. No such consequence follows a forfeiture of the corporate franchise. In case of a judgment forfeiting the corporate franchise and dissolving the corporation the court, unless expressly so authorized by statute, has no power to appoint a receiver to take charge of the property of the corporation as a part of the penalty of forfeiture, and even where a statute authorizes the appointment of a receiver on a judgment of dissolution the court has no power to appoint a receiver before trial and judgment of ouster or forfeiture."

Examination of the record convinces us that it does not call for reversal of the order denying the appointment of a temporary receiver, assuming that a court of equity might in a case such as this, in the exercise of its extraordinary powers and its sound discretion, so proceed if such action were required because of circumstances other than are here shown.

As to the appeal from the order denying a temporary restraining order and denying appellant's request for the impounding of funds, respondents move to dismiss this appeal on the ground that that portion of the order of the superior court is not appealable for the reason that there was no allegation or finding of the insolvency of any of respondents. Respondents base this motion upon Rem. Rev. Stat., § 1716, together with certain decisions of this court, including *State ex rel. Young v. Superior Court,* 43 Wash. 34, 85 Pac. 989; *State ex rel. Lilly Co. v. Brawley,* 104 Wash. 374, 176 Pac. 337; and *Pacific Coast Coal Co. v. District No. 10.*

*United Mine Workers of America,* 122 Wash. 423, 210 Pac. 953.

In view of the opinion we reach upon the merits of this branch of the case, it is not necessary to discuss respondents' motion to dismiss.

█ It is clear that the courts have no authority to fix the prices at which commodities such as petroleum products may be sold. *Northern Pac. R. Co. v. Department of Public Works,* 125 Wash. 584, 218 Pac. 507; *Southern Ice & Coal Co. v. Atlantic Ice & Coal Corporation,* 143 Ga. 810, 85 S. E. 1021; *The Express Cases,* 117 U. S. 1, 6 Sup. Ct. 542, 628.

As the legislature of this state has made no attempt to fix the price at which petroleum products may be sold, it is not necessary to discuss the power of the legislature in such cases.

█ Appellant contended below that respondents should have been required to answer the amended complaint, and that, this not having been done, the court should proceed without delay to grant some of the relief demanded by appellant, *pendente lite.* No question concerning the merits of the action as the same may be disclosed upon the trial thereof is here presented. We are concerned only with the order of the trial court denying appellant the temporary relief for which it asked. The court expressed the view that the action could be with reasonable celerity tried upon the merits and finally disposed of. This was an element which a court of equity was entitled to consider in determining the allowance or refusal of relief *pendente lite* such as was here demanded.

Appellant argues that, in actions based upon conspiracy, the courts may fix prices, and in this connection cites the opinion of this court in the case of *Eyak River Packing Co. v. Huglen,* 143 Wash. 229, 255 Pac.

123; 257 Pac. 638. The case cited reached this court on appeal after a trial on the merits. It is not in point upon the questions here presented, which concern only appellant's claim for interlocutory orders.

Appellant concedes that the commodity known as gasoline is not "affected with a public interest" to the extent that the state can fix the price, but argues that this rule has no bearing upon the questions presented upon this appeal.

Granting that gasoline and other petroleum derivatives fill as important a part in the lives and business of the people of this state as appellant contends, it is nevertheless true that that phase of the matter, while important, is not controlling and forms no sufficient justification for this court, sitting as a court of equity, to reverse such an order of a trial court as is now before us for review.

It is true that courts are no longer as much concerned as formerly with forms of actions. We determine the questions here presented without resorting to technicalities.

The matter of the possible effect upon this litigation of recent Federal legislation and orders, rules and regulations promulgated pursuant thereto, has been argued by counsel for the respective parties. In this connection, we find nothing in any act of Congress, or orders promulgated pursuant thereto, or in any executive regulation, which is determinative of the preliminary questions presented upon this appeal, or which calls for any conclusion other than that which we have reached, and we rest our decision upon the general principles of law applicable to the questions presented.

The extraordinary relief sought by appellant and denied by the trial court in the order appealed from

244

is unusual in its nature, and we find no warrant in law for reversing the order of the trial court denying appellant's various applications.

The order appealed from is affirmed.

TOLMAN, MILLARD, STEINERT, MAIN, BLAKE, and HOLCOMB, JJ., concur.

[1]Reported in 28 P. (2d) 797.