[No. 20080. Department One. April 7, 1927.]

EYAK RIVER PACKING COMPANY, *Respondent and Cross-Appellant*, v. ALME HUGLEN *et al.*, *Appellants*, JAMES W. PARKS *et al.*, *Respondents*.[1]

[1] CONSPIRACY (1)—CIVIL LIABILITY—COMPLAINT—SUFFICIENCY. A complaint for civil conspiracy states a cause of action where it alleges a combination to hamper and injure plaintiff's business and make it so unprofitable as to compel him to sell out at a loss or abandon it, and it is immaterial that the wrongdoers did not enter the conspiracy at the same period of time.

[2] SAME (1, 7)—EVIDENCE—SUFFICIENCY. In a civil action for conspiracy, the evidence makes a case for the jury against one who was employed by the other conspirators as an attorney at law to institute unfounded suits, where he went beyond his duties as a mere attorney at law and counseled and advised acts not in line with his duties.

[3] APPEAL (460)—REVIEW—HARMLESS ERROR—INSTRUCTIONS. In a civil action for a conspiracy to ruin or damage the business of another, it is harmless error to found an instruction upon "unnecessarily" ruining or damaging the business.

[4] CONSPIRACY (1, 8)—CIVIL LIABILITY—INSTRUCTIONS. In a civil action for a conspiracy to ruin or damage the business of a corporation, it is not error to instruct as to a conspiracy to compel the president of the corporation to do certain acts, where the president was the principal stock holder and to compel him to act against his will was an injury to the corporation.

[5] SAME (1, 8). In a civil action for a conspiracy to ruin or damage the business of another by instituting unfounded suits, it is not error to give an instruction as to whether there was

[1]Reported in 255 Pac. 123; 257 Pac. 638.

probable cause for the institution of the actions and that the same was a mixed question of law and fact.

[6] SAME (1, 8). In a civil action for conspiracy to damage or injure the business of another, error cannot be assigned as to a defendant who was a lawyer and standing in a different relation as to the suits than the other defendants, where such relation was well understood by the jury and they could not have misunderstood the court's reference thereto.

[7] NEW TRIAL (49)—AFFIDAVITS OF JURORS—IMPEACHMENT OF VERDICT. A new trial cannot be granted upon the impeachment of a verdict by the affidavits of jurors to the effect that they would not have consented to so large a verdict had they known that one of the defendants would be relieved therefrom by lack of evidence against him.

[8] NEW TRIAL (35, 37)—NEWLY DISCOVERED EVIDENCE—CUMULATIVE EVIDENCE—DILIGENCE—MATERIALITY. A new trial for newly discovered evidence should be denied where the evidence was merely cumulative and would probably not have changed the result and could have been discovered by the exercise of diligence.

[9] JUDGMENT (54)—NOTWITHSTANDING VERDICT—POWER OF COURT. Where there is no substantial evidence in support of the verdict as to part of the defendants, it is within the power of the court to direct judgment in favor of such defendants notwithstanding the verdict for the plaintiff, and without affecting the right of the plaintiff as against the other defendants.

[10] APPEAL (353)—DISMISSAL—GROUNDS. Under Rem. Comp. Stat., § 388, providing that only one bill of exceptions or statement of facts can be settled or certified after the rendition of final judgment, plaintiff, serving independent notice of appeal from part of a judgment, may join with the other appellants in furnishing the record and sharing the expense thereof.

[11] APPEAL (295)—RECORD—SETTLEMENT OF BILL—EXTENSION OF TIME FOR NOTICE. A stipulation extending the time for the settlement of a statement of facts, extending the time as to part of the appellants and signed by all of them, extends the time as to all of them.

[12] JUDGMENT (54)—NOTWITHSTANDING VERDICT—POWER OF COURT. Where there is substantial evidence in support of a verdict, the court has no power to enter judgment notwithstanding the verdict and can do no more than set the verdict aside and grant a new trial.

[13] CONSPIRACY (1, 7)—CIVIL LIABILITY—QUESTION FOR JURY. In a civil action for conspiracy, there is sufficient evidence to

make a question for the jury as against certain defendants claiming to have no part in the conspiracy of minority stockholders seeking to injure the business of the corporation, where it appears that such defendants were interested in a rival corporation and had aided and assisted the other conspirators, permitted persons in their employ to encroach on their rival's rights, and furnished money to purchase and obtain possession of the plant.

[14] APPEAL (493)—DECISION—MANDATE—PROCEEDINGS AFTER REMAND. Where judgment notwithstanding a verdict was erroneously given without passing upon respondent's motion for a new trial, reversal will be with direction to either grant a new trial or enter judgment upon the verdict.

Cross-appeals from a judgment of the superior court for King county, Ronald, J., entered January 16, 1926, in favor of certain defendants, notwithstanding the verdict of a jury rendered in favor of the plaintiff, in a civil action for conspiracy. Reversed on plaintiff's appeal.

*R. J. Boryer,* for appellants.

*Tucker, Hyland & Elvidge* and *Martin J. Lund,* for cross-appellant.

*G. E. Steiner,* for respondents.

FULLERTON, J.—In this action, at the trial in the court below, the jury returned a verdict in favor of the plaintiff, Eyak River Packing Company, and against the defendants, Alme Huglen, R. J. Boryer, James W. Parks and Pioneer Sea Foods Company, in the sum of $17,500. A motion for judgment notwithstanding the verdict was interposed on behalf of all of the defendants, which the trial court sustained as to the defendants Parks and Pioneer Sea Foods Company, and overruled as to the other defendants. A judgment on the verdict was entered against the defendants Huglen and Boryer, and a judgment of dismissal was entered in favor of the other defendants. Huglen and Boryer appeal from the judgment entered against them, and the

plaintiff appeals from the judgment entered notwithstanding the verdict.

The action against the defendants was founded on a charge of conspiracy. The substance of the complaint is that the plaintiff was organized as a corporation for the purpose of catching and canning salmon; that, in the year 1916, it built a salmon cannery on the Eyak river in the territory of Alaska, bought and built fishing boats and nets and other appliances, and entered upon the business for which it was organized; that it conducted its business during the years 1916, 1917, 1918 and 1919 at a good profit, investing a part of its gains each year in the betterment of its business; that during the year 1918, the defendant Huglen and one Finkelstein became stockholders in the plaintiff corporation; that the principal stockholder in the corporation was one Martin J. Lund, who was at all times its president and financial backer; that, in the fall of the year 1919, the defendants Huglen and Boryer· and the stockholder Finkelstein, together with others, some of whom had been employees of the plaintiff, entered into a conspiracy, the object and purpose of which was to compel the principal stockholder Lund, to buy the stock of Huglen and Finkelstein at a grossly excessive price, or to cause the ruin of the plaintiff's business so that they might obtain its property and business at a price less than its value.

The complaint then sets out the acts and conduct of the defendants named in pursuance of the conspiracy. It is alleged that they began a number of unfounded actions against the plaintiff, all of which were dismissed when issue was taken on the allegations of the complaint and the causes pressed for trial; that one of such actions was an attempt to have a receiver appointed for the plaintiff, which proceeding was dismissed at the preliminary hearing; that, notwithstand-

ing they represented a minority of the stock in the corporation, they held a purported stockholders' meeting, at which they pretended to elect certain of their number as officers and trustees of the corporation; and that they brought actions against the president of the corporation falsely charging him with embezzling the corporation's funds, and falsely charged him with wrecking the corporation, which actions were likewise dismissed without trial. It is also alleged that the defendants interfered with the business of the plaintiff, by falsely misrepresenting its financial condition, thereby preventing it from making contracts with fishermen—contracts necessary to the successful conduct of its business.

The allegations against Parks and the Pioneer Sea Foods Company are that they joined the conspirators in the winter of 1921 and 1923, and thereafter furnished financial aid to the other conspirators; that they supplied them with boats, nets and other fishing gear with which to harass and injure the plaintiff's business, and aided and abetted them in placing nets and weirs in front of the nets and weirs of the plaintiff, and in closer proximity thereto than the Federal statutes and the custom of fishermen in that locality permitted. It is then alleged that the combined acts of the conspirators so far injured the plaintiff's business that it could not operate other than at a loss, and was compelled to sell its property and business for the sum of ten thousand dollars, which was thirty thousand dollars less than its actual value.

The answers of the defendants were, in the main, general denials, only the defendant Huglen setting up an affirmative defense. This defense was to the purport that the actions set forth in the complaint were instituted in good faith and for the purpose of protecting and securing the rights of the answering defend-

ants; that there had been mismanagement of the corporation on the part of the corporation's president Lund, and that the suits were dismissed only after Lund had agreed to right the wrongs complained of in the suits.

[1] The general objection is made by all of the defendants that the complaint does not state facts sufficient to constitute a cause of action. We have, however, no doubt that a cause of action is stated. A conspiracy is a combination of two or more persons to commit a criminal or unlawful act, or to commit a lawful act by criminal or unlawful means. Plainly, the complaint alleges a combination among the defendants to so hamper and injure the plaintiff's business as to make it unprofitable to the plaintiff, and either compel its entire abandonment or compel its sale at a price less than its actual value. A combination for such purposes is unlawful, and when carried into fruition constitutes an actionable wrong. Nor is it less a wrong that the processes of the courts are used in the accomplishment of the purposes. While every one who deems himself aggrieved by another may lawfully resort to the courts for relief when he acts honestly and in good faith, no matter how unfounded may be his belief that a wrong has been done him, he has no lawful right to use the processes of the courts when his sole purpose is to wrong and injure another, or to compel that other to do some act against his will. Nor is it material that the wrongdoers did not enter the conspiracy at the same period of time. Every person who enters into a conspiracy, no matter whether at its beginning or at a later stage of its progress, is in law a party to every act of the conspirators, and is liable for all of the acts done in pursuance of the conspiracy in the same manner that they would be had they been a party to all of the wrongful acts. The complaint in this instance al-

leges facts which bring the defendants within these rules, and, we repeat, we have no hesitancy in holding that it states a cause of action against all of the defendants.

[2]  The appellants, Huglen and Boryer, next urge that the evidence does not substantiate the allegations of the complaint.  The testimony is in itself massive and is accompanied by numerous exhibits.  There is an abstract on the part of the appellants and supplemental abstracts on the part of the respondent, yet these do not contain all of the record which the respective parties deemed material for the court's consideration. In the briefs of counsel, references are made alternatively to the abstract and to the record as certified by the trial judge, with the result that we have been compelled to go through the record, as certified, in order to obtain a just comprehension of the facts as disclosed thereby.  But we shall not review the evidence at length. To do so would but unduly extend this opinion, and would add nothing of value as a precedent.  As to Huglen, there was abundant evidence from which the jury could find that his purpose was what the plaintiff alleged it to be.  The evidence was conflicting, it is true, but the record presents a question of legal cognizance, in which it was the sole province of the jury to determine on which side the evidence preponderated.  We have therefore no rightful authority to question their findings.

As to Boryer, the evidence is not so clear.  Boryer is an attorney at law, and acted as the legal adviser of the alleged conspirators, other than Parks and the Pioneer Sea Foods Company, and seems to have had no financial interest in the consummation of the conspiracy.  But there is evidence tending to show that, in advising his clients, and in the institution of the actions of which complaint is made, he went beyond his duties as a mere

attorney and counseled and advised acts not in line with his duties. It was doubtless because of this that the jury held him liable. Furthermore, the trial judge refused to set aside the verdict against him, and we feel that we should not ourselves interfere.

[3] The further assignments on the part of the appellants question the correctness of the instructions of the court to the jury. A part of the court's instruction numbered two reads as follows:

"A combination which is lawful within itself may become a conspiracy when the purpose in view is unnecessarily to ruin or damage the business of another merely because of the other's refusal to do an act against its own will or judgment."

Objection is made to the use of the word "unnecessarily" used in the instruction. But it seems to us that this use of the word, if error at all, is harmless error. The instruction was possibly sufficiently complete without the use of the word, but manifestly we think its use did not operate to the prejudice of the appellants.

[4] Instruction numbered five reads as follows:

"To sustain this action the plaintiff must prove a combination consisting of two or more of the persons named in its complaint conspiring and confederating together with the common design, object or purpose of so harassing, vexing, hindering or interfering with plaintiff as to compel it, or its president, to purchase the stock of Huglen and Finkelstein for more than its value; or, to sell and dispose of its property and business to such alleged conspirators at less than its value; and must prove further that said conspiracy so manifested itself in words and acts or conduct alleged as to inflict upon plaintiff damage."

The objection to this instruction is directed to the reference made to the president of the corporation; the argument being that it was not an injury to the corporation, who was the sole plaintiff, to conspire to com-

pel its president to buy the stock of the conspirators at a price in excess of its value, or to compel the president to sell and dispose of the business and property of the corporation at a price less than its value. But the evidence discloses that the acts here referred to were a part of the general scheme which the conspirators set out to accomplish. The president was the principal stockholder of the corporation and had its management and control, and to compel him to do an act against his will which affects his free right of management and control, is an injury to the corporation.

[5] Instruction numbered seven reads as follows:

"The gravamen of one of the wrongful acts charged against defendants is bad faith in misusing the judicial process of the court by intentionally bringing suits known to be groundless and wrongful and without merit, and merely to harass and vex plaintiff and to accomplish the illegal end alleged.

"Courts are established to afford parties a means of enforcing rights or of preventing wrongs, and it is the right of any party feeling himself aggrieved to institute, through his attorney, proceedings seeking redress through such courts; and it is the duty of an attorney accepting employment from a client to exercise his best judgment, and to act to the best of his ability to secure the rights of, and to prevent wrongs against, his client.

"This right and duty of seeking free access to the courts do not give the right to employ the power of government, or its judicial process, maliciously to bring a suit known to be false and unfounded as a means of inflicting wanton injury upon another. Nor is the institution of a suit merely groundless and without merit, or the dismissing of the same without trial, necessarily an abuse of process subjecting the party bringing it and his attorney to liability as for conspiracy. It all depends upon the facts and circumstances.

"An attorney in advising his client has a right to rely upon the truth of the statements made to him by his client, unless he knows, or as an ordinarily skilful

attorney, has reason to believe such statements, to be untrue or made in bad faith; and if, on the representations of his client, the attorney in good faith and with the view only of protecting his client's interests, advises him to bring an action in a court of law and, as such attorney, brings such action for his client, then neither the institution of such action, nor the dismissal of the same before trial, is evidence of bad faith of said attorney.

"Where a person seeks the advice of an attorney before a suit at law and states fully and fairly all of the facts relative to his case of which he has knowledge, and if, after making such statements, the attorney advises him that he has a good cause of action, and if on such advice of his attorney he brings such action, then the client has acted within his legal rights and no wrong can be imputed to him, even if the action be thereafter dismissed before trial. A person has a right to bring an action in a court of law on the advice of his attorney where he had given his attorney full and fair statements of the facts within his knowledge, and, under such circumstances, a dismissal of the action will not be evidence of bad faith.

"In order, therefore, to charge an attorney and his client with conspiracy in having brought a suit wrongfully, it must not only appear that there was a design and purpose in bad faith to bring an action which was not only groundless but which was so understood by both attorney and client to be groundless, and brought as such.

"It is conceded in this case that certain suits were brought by the defendants Huglen and Boryer—Boryer acting as attorney. It is your duty, therefore, to inquire from the evidence into the purpose of their bringing these suits. If the suits were brought in good faith, and in the reasonable belief of both attorney and client, that the client was entitled to the relief, and that the only purpose of bringing the suits was to secure such relief, and not merely to harass or vex or inflict wanton injury on the plaintiff, then the bringing of such actions and the end in view are both lawful, and such acts would not constitute a conspiracy, rendering the

defendants liable, even though the attorney may have been honestly mistaken in his understanding of the law or the remedy, and such actions may have been really without merit, and may have resulted in damage to the plaintiff.''

It is objected to this instruction that it is not a correct instruction as to probable cause; that it does not conform to the rule we announced in the case of *Finigan v. Sullivan,* 65 Wash. 625, 118 Pac. 888; and that it states as a conceded fact, a matter that was not conceded. But we cannot think the objections well founded. In so far as it defines the term ''probable cause,'' it correctly defines it. If anything is omitted in that respect, it is rather nondirection than misdirection, and the remedy for such a fault is not by an exception merely. Nor do we find anything in the rule of the cited case with which the court here failed to comply. In that case it is definitely laid down that unless the evidence is without conflict, the question whether there is probable cause for the institution of an action is a mixed question of law and fact, in which instance it is the duty of the court to declare the law as applied to the facts of the particular case and leave it to the jury to say whether the facts as found by them bring the party accused within the rule of ''probable cause.'' As we read the instruction here in question, the court complied with, rather than violated, this rule.

[6] As to the final objection, it might be that the jury could have misunderstood the court's reference to Boryer's relation to the actions mentioned, had they known no more of the facts than could be gathered from the language of the court. But such was not the situation. The cause, at the time the instructions were given the jury, had been on trial before them for some three weeks, and the evidence in many places clearly depicted Boryer's relation to the controversy. At no place in

the record was it stated that he was an actual party to the actions mentioned, or stated that he bore other relation thereto than that of attorney for the plaintiffs in the actions. The jury, therefore, could not have misunderstood the court.

The objection taken to the instruction numbered eight, we think, requires no special consideration. It related to the right of a corporation to purchase its own stock, and told the jury that it had no such right, and told them further that if it did so purchase such stock and charged the purchase price to a stockholder without his knowledge or consent, it could not offset the charge against an obligation it owed to the stockholder. This was not only manifestly correct, but it was a charge favorable, rather than unfavorable, to the parties here complaining.

[7] There was a motion for a new trial, based in part on the action of the trial court in setting aside the verdict as to the defendants Parks and the Pioneer Sea Foods Company, and in part on newly discovered evidence. In support of the first part of the motion, certain jurors made affidavit to the effect that they would not have consented to so large a verdict had they known that the defendants relieved from it were not to be held, and "possibly would not have voted for any verdict against the other defendants." But it was the right of the trial court to set aside the verdict against any or all of the defendants, and this right is not to be controlled by testimony of this sort coming from the jurors after they have been discharged and have ceased to be an integral part of the court. A verdict returned by the jury and accepted by the court is final and conclusive in so far as the jury are concerned. They will not either as a body or as individuals be heard to stultify it. Public policy and common decency alike forbid it.

[8] The principal piece of evidence, which is claimed to be newly discovered, is a copy of a letter written on behalf of the plaintiff to the collector of internal revenue. In so far as it is material to the defendants' purposes, it related to the value of the plaintiff's plant. But the value of the plaintiff's property was one of the principal subjects of inquiry during the trial of the cause, and it is difficult to believe that the addition of this evidence to the question would have materially affected the result. There is, moreover, another consideration always present in cases of this sort. As we have stated, the trial was an extended one. The cost to the successful litigant and to the state was no small burden. In such a case, there should be some very strong showing of material evidence, not discoverable in the exercise of due diligence while the trial was in preparation or was pending, which in all probability will change the result, before a new trial is granted. The present application presents no such showing. The newly discovered evidence presents no new consideration. It is but cumulative of evidence already in the record, and for this reason alone it should be more than ordinarily persuasive to warrant the granting of a new trial.

[9] The argument to support the contention that the court erred as against the appellants in dismissing the action as to Parks and the Pioneer Sea Foods Company is that the court had no such power; that, when the court finds there is not sufficient evidence to sustain a verdict against certain of the defendants, it is empowered only to grant a new trial in favor of such defendants, and may not enter a judgment in their favor. But the contention and argument confound the rules. It is the rule, undoubtedly, that where there is substantial evidence in support of the verdict, the court may not disregard it and enter a judgment in favor of

the parties against whom the verdict is returned; that its power over the verdict in such an instance is limited to setting it aside and granting a new trial. But where there is no substantial evidence in support of the verdict, it is within the power of the court, notwithstanding the verdict, to direct a judgment in favor of any or all of the defendants against whom the evidence fails. In this instance, the court but applied the latter rule. It concluded that there was no substantial evidence against the defendants Parks and the Pioneer Sea Foods Company on which the verdict could be supported. Nor did its conclusion in this respect in any way affect the rights of the plaintiff as against the other defendants. Tort feasors are severally as well as jointly liable for the torts they commit. The party injured by the tort may sue the whole of them jointly, or may sue any number of them less than the whole, or may sue one of them individually, and, if he sues more than one, he may have a judgment against those whom the evidence sustains his cause of action, be the number what it may. Conceding, therefore, that the court rightly held that there was no evidence to sustain the verdict against the defendants last named, we cannot conclude that the holding inured to the advantage of the appellants.

[10] On the appeal of the plaintiff, we are met at the threshold with a motion to dismiss the appeal. The plaintiff served an independent notice of appeal, and it is contended that this required the plaintiff to bring to this court a separate and independent record, the character of record it would have been obligated to furnish had it been the sole appellant. This the plaintiff did not do. It joined with the other appellants in furnishing the record, sharing the expense thereof with them. This, we think, is in accord with the statute. In

Rem. Comp Stat., § 388 [P. C. § 7816], it is provided that,

".  .  . only one bill of exceptions or statement of facts can be settled or certified after the rendition of the final judgment in the cause,"

and the plaintiff had to join with the other appellants in furnishing the statement or else waive any benefit to be derived therefrom.

[11]   There is no question that the notice of appeal was regularly and timely served, and a bond to perfect the appeal was timely filed. Nor is there any question that the statement of facts was filed and served within the time the serving and filing thereof was extended by stipulation. It is said, however, that this stipulation only extended the time as to the appellants Huglen and Boryer and not to the plaintiff. True, it so reads on its face, but it is executed by all of the parties, and, since there can be but one statement of facts, the extension of time of its filing as to one must be an extension as to all. The motion to dismiss, therefore, must be denied.

[12]   On the merits of the appeal, we are unable to agree with the trial court. It must be remembered that a motion for judgment notwithstanding the verdict invokes no element of discretion. It invokes the judicial functions of the court. Such a motion can be granted only when the court can say, as a matter of law, that there is neither evidence nor reasonable inference from evidence to sustain the verdict. The trial court can grant a new trial on conflicting evidence, because such a motion invokes a compound of the discretionary and judicial functions of the court, but if there is evidence of a substantial character, something more than a mere scintilla of evidence, in support of the verdict, the court cannot disregard the verdict and enter a judgment for the party against whom the verdict is returned, no

matter how much it may be convinced that the verdict is contrary to the preponderance of the evidence. The right of trial by jury is a constitutional right, and every litigant, in an action of legal cognizance, has an absolute right to that method of trial, a right which the court may not disregard.

[13]   Briefly, the evidence by which the respondents were sought to be charged was this:   There was an active attempt on the part of certain persons, be their ultimate purpose what it may, to injure and destroy the plaintiff's business.   The respondents were operating a rival concern, and to compel the plaintiff to quit operations as a salmon packing plant, and to obtain its fishing grounds, was an advantage to them.   They permitted fishermen in their employ to encroach upon the plaintiff's fishing grounds and catch fish which would otherwise have been caught by the plaintiff's nets and weirs.   When the plaintiff felt compelled to sell its plant, they furnished the money to make the purchase and paid to the persons whose acts induced the sale and who had obtained an option to purchase, a thousand dollars for their bargain, thereby obtaining title to and possession of the plaintiff's plant and business.   It is true, there is in the record a plausible explanation of these acts.   There is evidence to the effect that they but took advantage of a situation caused by others, which situation they had no part in causing, and it may be that the preponderance of the evidence is in their favor.   But it seems to us clear that there was here a conflict in the evidence, rather than a want of evidence, making the question one for the determination of the jury, and one on which their determination is obligatory upon the court.

[14]   The court, however, as we read the record, did not pass upon the motion of these respondents for a new trial, and they are still entitled to the judgment of

the court upon that question.  Our order is, therefore, that the judgment be affirmed upon the appeal of Huglen and Boryer; that it be reversed on the appeal of the plaintiff, Eyak River Packing Company, with directions to the court below, either to grant a new trial to Parks and the Pioneer Sea Foods Company, or enter a judgment against them upon the verdict.

TOLMAN, MAIN, and MITCHELL, JJ., concur.

ON REHEARING.

[No. 20080.  *En Banc.*  July 13, 1927.]

PER CURIAM.—Upon a rehearing *En Banc*, a majority of the court adhere to the conclusions reached by the Departmental opinion heretofore filed herein.  The cause is therefore remanded with directions to the superior court to proceed in accordance therewith.