# THOMPSON et al. v. BOWN LIVE STOCK CO. et al.

No 4652.   Decided January 4, 1929.   (276 P. 651.)
Rehearing Denied April 13, 1929.

1

*Knox Patterson,* of Moab, and *Evans & Sullivan,* of Salt Lake City, for appellants.

*Bagley, Judd & Ray,* of Salt Lake City, for respondents.

*James Ingebretsen,* of Salt Lake City, for defendant Walker Bros. Bankers.

GIDEON, J.

The controversy here related to the ownership of 484 bonds of the Green River irrigation district, of the par value of $100 each, and alleged to be of the actual value of $15 each. Plaintiffs are Cecil Thompson and A. H. Stevenson, Jr., administrators of the estate of E. W. Hulse, deceased, and H. B. Cole. The defendants are the Bown Live Stock Company, L. J. Cullen personally, and L. J. Cullen, agent, W. D. Thompson, W. C. Snow, A. M. Myrup, and Walker Bros., Bankers. W. C. Snow was president of the live stock company at the time of the sale of its interest in the bonds to plaintiffs, and as such carried on the negotiations which resulted in the sale. Ownership and right to possession of the property on the part of plaintiffs is alleged in the complaint.

This case was first tried during the year 1926 before a jury in the district court of Salt Lake county. The jury returned a verdict in favor of plaintiff, and judgment was entered on that verdict. Thereafter defendants filed a motion for a new trial. In this motion five grounds were specified as reasons why a new trial should be granted. In September, 1927, the court granted the motion for a new trial, without designating on which ground it was granted. In 1927 the case again came on for hearing. A jury was impaneled and plaintiffs submitted their evidence and rested. Defendants separately interposed motions for nonsuit. The court, on its own motion, ruled that the questions involved in the case and the issues are cognizable only in a court of equity, and not in a case at law. Over appellants' objections the jury was dismissed. Defendants' motions for nonsuit were denied, and the court proceeded to hear the evidence. Thereupon findings of fact and conclusions of law were prepared. Judgment in favor of defendants was entered, dismissing the complaint of plaintiffs. Motion for a new trial was then filed by plaintiffs. This motion was overruled. Plaintiffs appeal.

Hon. M. L. Ritchie presided at the first trial, and he made the order granting the new trial. The second trial was had before Hon. William McCrea. On or about April 28, 1927, plaintiffs filed a motion before Judge Ritchie, asking that the order of September 14, 1926, granting defendants a new trial, be vacated, and that the judgment entered on the verdict of the jury, rendered on the first trial and dated May 22, 1926, be reinstated and permitted to stand as the judgment of the court. At a later date this motion was argued. The same was by the court denied. The proceedings had at the first trial, the motion to reinstate, the order denying this motion, and the proceedings of the second trial are all included, settled, and made a part of the bill of exceptions now before us.

The numerous errors assigned by appellants are divided into four groups and are so argued. In appellants' brief such grouping is stated thus:

"(1) The court erred in granting defendants' motion for a new trial on September 14, 1926, following the verdict and judgment in appellants' favor at the first trial, and in denying appellants' motion, on June 18, 1927, to set aside the order granting such new trial and to reinstate the verdict of the jury and the judgment entered thereon.

"(2) Errors of the court at the second trial in the improper admission of certain evidence over plaintiffs' objections and exceptions.

"(3) Error at the second trial in dismissing the jury over plaintiffs' objections and exceptions, and denying plaintiffs the right to finish the trial of the controverted issues of fact growing out of the law action to a jury.

"(4) That the findings of the court at the second trial are not supported by the evidence and that the conclusions and judgment are contrary to law."

We shall first consider the assigned errors referred to in subdivision 1 of the above. There was conflict in the evidence submitted to the jury at the first trial. One of the grounds urged in the motion for a new trial was insufficiency of the evidence to support the verdict. A wide discretion is permitted trial courts in weigh-

ing evidence on motions for new trials where the evidence is in conflict. As stated by the Supreme Court of Washington in *Eyak River Packing Co.* v. *Huglen*, 143 Wash. 243, 255 P., at page 129: "The trial court can grant a new trial on conflicting evidence, because such a motion invokes a compound of the discretionary and judicial functions of the court." Such has been the recognized rule in this jurisdiction. Respondents invoke this rule, and the following Utah cases in support of the same are by them cited: *White* v. *Union Pac. R. Co.*, 8 Utah 56, 29 P. 1030; *Davis* v. *Southern Pac. R. Co.*, 3 Utah 218, 2 P. 521; *Collet* v. *Beutler*, 27 Utah 541, 76 P. 707; *Valiotis* v. *Utah-Apex M. Co.*, 55 Utah 151, 184 P. 802; *Perrin* v. *Union Pac. R. Co.*, 59 Utah 1, 201 P. 405. In addition, the ruling of the court in granting a new trial was not error for other reasons, which will appear later in this opinion.

The assigned errors referred to in subdivision 2 of the above relate to the admission of certain testimony over plaintiffs' objections. Defendant Snow was called by plaintiffs to identify his signature and to prove his right as president of the Bown Live Stock Company to execute a bill of sale transferring to plaintiffs the interest of the live stock company in the matter in controversy. He identified his signature and testified that he had executed the paper on behalf of the company. Defendants' counsel was permitted, on cross-examination, to interrogate this witness as to the transactions leading up to the sale at some length, and as to what was said between the parties at the time. This line of testimony was strenuously objected to by appellants, as not being within the rights of the defendant in cross-examination.

We are of the opinion that the court was too liberal in permitting defendants' counsel to cover matters not included in direct or cross-examination. But the matters testified to by Mr. Snow were covered by other testimony in the record, and, while the court should not have permitted the defense to attempt to prove its case by cross-

examination of this witness, in view of the limited testimony adduced from him on direct examination by appellants, its action in this respect was not so erroneous as to work a reversal of the judgment. Thus we find that the assigned errors referred to in the foregoing subdivisions 1 and 2 should not prevail.

Much of appellants' brief is devoted to a discussion of the trial court's order dismissing the jury after plaintiffs had submitted their proof and had rested. Appellants contend that by such order they were denied the right to have the issues of fact determined by a jury; also that this action is one at law, and not a suit in equity. Did the trial court err in its ruling this to be an equity case, and not one at law? We think not.

It is true that plaintiffs in their complaint alleged that by reason of the purchase from the Bown Live Stock Company they "became and are now equal and joint owners of one-half of said 987 bonds and are entitled to the immediate possession of 494 of said bonds." The complaint further alleges from whom appellants claim to have received title, and states that on or about November 16, 1920, defendants A. M. Myrup and W. D. Thompson owned said bonds in equal shares, and jointly placed the same on or about that date in possession of defendant Walker Bros., Bankers; that thereafter Myrup sold his undivided one-half interest to the Bown Live Stock Company, and thereafter, on or about August 18, 1921, the Bown Live Stock Company sold its interest to plaintiffs. It is further alleged on information and belief, that defendant Cullen personally and as agent claims some right, title, or interest in and to a part of such bonds, but that said Cullen, either personally or as agent, has no right, title, or interest in or to said 494 bonds, or any of them, belonging to plaintiffs as alleged.

The prayer of the complaint is, in substance:

"(a) That L. J. Cullen, both individually and as agent, be required to set forth any claims that he may have to said bonds, and

that the same may be adjudged subject to the claim of plaintiffs; (b) that Walker Brothers, Bankers, be required to set forth the amount of their storage charges, and that upon payment of the same they be required to deliver the bonds to the clerk of the court to be dealt with according to the rights of the parties; (c) that it be ordered and adjudged that plaintiffs are the owners and entitled to immediate possession of 494 of said bonds, and that upon delivery of the said bonds into court a count be made of the number of the bonds and that there be ordered delivered to plaintiffs 494 thereof; (d) that, if for any reason 494 of said bonds cannot be delivered to plaintiffs, then that there be delivered to plaintiffs such number of bonds as they may be adjudged entitled to and as are available, and that plaintiffs have judgment against the defendants W. C. Snow and Bown Live Stock Company for the value of such bonds as cannot be delivered on a basis of $15 per bond, with interest."

Each defendant filed a separate answer. In all of such answers the allegation of ownership is denied. Cullen, in his answer, sets forth at length as required by the prayer of the complaint the basis of his claim, namely, the contract existing between him and W. D. Thompson, and alleges that whatever right appellants have in and to said bonds was acquired through subsequent purchase from W. D. Thompson and his successors in interest, and that all of such rights are subject to the rights and interest of Cullen. Cullen in his answer sets out in full the written contract between him and Thompson. A reply was filed on behalf of plaintiffs and the ownership of the bonds put in issue.

It thus became apparent to the trial court at the close of plaintiffs' testimony, both from the pleadings in the case and the testimony adduced by plaintiffs, that the real and controlling question to be decided by the court was the conflicting claims of the appellants and Cullen respecting the ownership of these bonds; that the question of possession was only incidental, and would logically and legally follow a determination of the question of ownership. Upon the complaint and answer the court rightfully entertained the view that such was the issue to be determined,

and that it was cognizant in and should be decided by a court of equity. *Westminster Inv. Co.* v. *McCurtain,* 39 Utah 544, 118 P. 564. No error was committed in making the order dismissing the jury.

It appears that Cullen is an attorney at law residing at Chicago; that prior to 1918, through and by reason of the operation of loans, he had acquired title to 918 acres of land within the Green River irrigation district; that he had liens by reason of mortgages on 250 additional ■ acres, and that these mortgages were in default. Prior to 1919 there was issued and outstanding $201,000 par value of bonds of the Green River irrigation district. The par value of the bonds was $100 each. Cullen at that time had held in Chicago $53,800 par value of these bonds. In addition, he held warrants of the district in excess of $6,500. He also held an additional block of bonds of the par value of $14,800, with six or seven years' interest coupons not paid. Land in the irrigation district susceptible of irrigation under what is designated in the record as the 42-foot canal amounted to 1,500 acres. Cullen, with the land owned by him and the land included in the mortgages, owned and controlled more than 1,000 acres of the land under this ditch. There were numerous dwelling houses situated on the land in the irrigation project. There were outbuildings, fences, ditches, and between 250 and 300 acres seeded to alfalfa. W. D. Thompson, it appears, as early as 1918, under some verbal arrangement with Mr. Cullen, took possession of the land under the 42-foot canal. All of the land owned and held by Cullen was under that canal. In the summer of 1919 Cullen visited the project and conferred and negotiated with W. D. Thompson with a view to coming to an agreement by which Thompson could take over 1,000 acres of the land under the 42-foot canal, upon which were located the improvements as specified, and by paying a certain stipulated amount thereafter acquire title to these lands, together with the bonds held by Mr. Cullen and other bonds to be thereafter purchased.

Accordingly, after these negotiations and after Mr. Cullen had returned to Chicago, he addressed a letter to Mr. Thompson, detailing his version of the verbal agreement or understanding had between him and Mr. Thompson respecting the purchase of these lands and bonds by Mr. Thompson. For an understanding and determination of the controversy between the parties to this litigation, it is necessary to here set forth much of that letter. The letter is dated October 16, 1919, and addressed to defendant W. D. Thompson, Green River, Utah. The first paragraph is:

"I have explained to my people the nature of the proposition I made to you and they are willing to let you try to work things out along the lines laid down."

The letter then proceeds:

"We now have title to the following tracts under the 42-foot canal: (Here follows a description by metes and bounds of the property of which Cullen had title.) For use with these tracts we have 538 bonds, for $100 each, of the district, with interest coupons from June 1, 1914, inclusive, attached, and several hundred dollars' worth of delinquent coupons on other bonds. We have also district warrants aggregating $6,837.03, with about three years' interest accrued thereon. * * *

"George M. Sullivan, or clients controlled by him, own $76,900 worth of the bonds of the district, with all of the unpaid coupons attached thereto. He has offered to sell us those bonds for 10 cents on the dollar, disregarding the delinquent coupons and taking the face of the bonds only as the purchase price basis.

"I can put in $3,500 of the purchase price of the bonds. If you will raise the balance of the amount required to take over all of the bonds held and controlled by Sullivan, we will let you take the 918 acres first above described and enough of the remaining 261 acres to make up 1,000 acres; we will allow you the free use of all of the warrants above referred to and the $53,800 worth of bonds which we already own, and the $76,900 bonds we propose to take over from Sullivan, with all of the coupons in connection therewith, on the following basis: You may have the full and free use of the land, warrants, and bonds and bond coupons from November 1, 1919, to November 1, 1924, without paying us anything at all for the years ending November 1, 1922. Out of the net profit made by you during the year ending November 1, 1923, we would expect you to give us

20 per cent to apply first on 6 per cent on $50,000 and if the 20 per cent of your profit exceeded $3,000 the balance would be applied in reduction of the $50,000.

"For the year ending November 1, 1924, we would expect you to give us a further 20 per cent of your net profits to be applied first on 6 per cent on the balance of $50,000, and the remainder, 20 per cent, if any, to be applied in further reduction of said $50,000.

"At the end of the five-year period, or at any time prior thereto, you would have a right to take the 1,000 acres in warrants still on hand and any of the above-mentioned 538 bonds already controlled by us, or the 769 bonds to be taken over from Sullivan, with all unpaid coupons attached, for $50,000 cash. If you elected to purchase, but were unable to pay all of the cash, we would agree to take half cash and the balance on such time as might be agreed on at 6 per cent per annum, to be secured by a mortgage on the land, bonds, and warrants. * * *

"As I explained to you, if the proposition is accepted by you, there will be no personal liability on your part beyond the amount you contribute toward the purchase of the Sullivan bonds. If, in spite of all your efforts, you are unable to make a go of the district and the business you propose to run therein, the only advantage we derive from your undertaking is the bonds purchased with your money from Sullivan. * * *

"Any land and bonds taken over by us over and above the 1,000 acres will be turned over to you or any one designated by us at just what it costs us.

"If through the development of more than 1,500 acres in the district it turns out that we have more bonds than we need for the land you will take, we will be willing to allow you to use the extra bonds and coupons in any way and on any terms which would be equitable and promise the best results for the district as a whole. * * *

"I believe this sets forth in full the proposition we agreed on. The general tentative proposition is to give you the full use of every thing we have at Green River for at least five years, without any payment or benefit to us as far as you are concerned, beyond the amount you will contribute for the Sullivan bonds. You are to be allowed to use the land and district in any way you please, and if you ultimately take over the land for the $50,000 we will carry out any contract you may enter into with regard to any particular part of the land which you may induce others at Green River to go on and develop."

The defendant Thompson received this letter by regular mail, and thereafter, and on October 25, 1916, addressed a communication to Mr. Cullen, in which he acknowledged receipt of the letter of October 16th, and stated that he had carefully read the same, and also stated that the letter of October 16th was just as they had talked the matter over, with one minor exception, which was considered immaterial, and that the deal "looked good" to him. In his communication Thompson agreed to the terms of the contract as outlined by Mr. Cullen in his letter of October 16th. Thereafter, under that agreement, Mr. Thompson continued in possession of the property, and both he and Mr. Cullen treated the proposition contained in the letter of October 16th and Thompson's reply thereto as a contract existing between them. In fact, no other or different contract or arrangement was ever made between these parties by which Thompson retained possession and the parties together purchased the bonds from Mr. Sullivan.

At a later date Mr. Thompson sold and conveyed, an undivided one-half interest in the project to the defendant A. W. Myrup, who in turn sold his interest to the Bown Live Stock Company, and this company, under date of August 19, 1921, executed a bill of sale to H. B. Cole and E. W. Hulse, now deceased. It also appears without dispute that, at the time defendant Myrup purchased the one-half interest from defendant Thompson, Myrup was shown a copy of Cullen's letter, dated October 16, 1919, and was advised of the terms of the contract between Cullen and Thompson, and that thereafter, during the time that Myrup owned the one-half interest with the defendant Thompson, he occupied the land with Thompson and in every way treated the same as being subject to the terms of the Cullen agreement. The officers of the live stock company were also advised of the terms of the contract between Cullen and Thompson. It appears without controversy that on or about October 4, 1920, the defendants Cullen, Thompson, and Myrup purchased from George M. Sullivan and his as-

sociates 787 bonds of the Green River irrigation district for the sum of $15 each, and that Cullen contributed $3,500 as a part of that purchase price.

In the year of 1921, and thereafter until the death of Mr. Hulse in 1922, H. B. Cole and E. W. Hulse were partners, and were interested in the operation of a bank at Green River, Utah. The negotiations leading up to the sale of the interest of the Bown Live Stock Company to Cole and Hulse were conducted largely by the defendant W. D. Thompson, and one of the chief reasons for the efforts to interest Cole and Hulse in the project was their supposed ability to finance the venture. This sale was consummated August 19, 1921, at which time the bill of sale from the live stock company to E. W. Hulse and H. B. Cole was executed by the live stock company and delivered to Hulse. On the same day, and as a part of the same transaction, a communication was written by the live stock company, addressed to Walker Bros., Bankers, and delivered to Mr. Hulse, advising the bank that the interest of A. M. Myrup in the bonds of the Green River irrigation district held by it as the property of W. D. Thompson and A. M. Myrup had been theretofore sold to the Bown Live Stock Company, and that the Bown Live Stock Company had on that date sold all of said interest in the bonds formerly belonging to A. M. Myrup to H. B. Cole and E. W. Hulse, and that they, Cole and Hulse, were the owners thereof with W. D. Thompson. This communication further stated:

"Therefore this will authorize you to turn said bonds over to said H. B. Cole and E. W. Hulse, so far as the interests in same formerly owned by A. M. Myrup and now owned by this company is concerned, and this will be our full release for same to H. B. Cole and E. W. Hulse, and relinquishment of all right or claim to said bonds."

At the same time Hulse drew a draft on H. B. Cole & Co. of Salt Lake City, in favor of the live stock company, for the sum of $7,500 as the agreed purchase price of the interest of the live stock company. That draft was after-

ward paid at Salt Lake City, and the purchase price passed to the credit of the Bown Live Stock Company. This bill of sale, together with the order upon the bank and the paid draft, constitutes the basis of plaintiffs' claim to the bonds in controversy. So far as material here the bill of sale is as follows:

"Know all men by these presents: That in consideration of the payment to it of the sum of ten dollars and other good and valuable consideration by H. B. Cole, of Salt Lake City, Utah, and E. W. Hulse, of Green River, Utah, the receipt of which is hereby acknowledged by it, the Bown Live Stock Company, a corporation, does hereby and by these presents sell, convey, transfer and deliver to the said H. B. Cole and E. W. Hulse all its interest in the certain bonds of the Green River irrigation district heretofore owned by Myrup and Thompson, now on deposit at Walker Bros.' bank, Salt Lake City, Utah, consisting of the interest therein formerly owned by A. M. Myrup, and by him heretofore transferred to the said Bown Live Stock Company."

It can hardly be contended that the letter of October 16, 1919, addressed to W. D. Thompson, and Thompson's reply thereto, under date of October 25, 1919, considered in connection with the acts of Thompson in continuing in possession of the premises and property described and referred to in the letter of October 16th, did not constitute a binding and valid contract between these parties. Had Thompson complied with the stipulations and conditions therein contained, a court of equity would have found no difficulty in enforcing the terms of the contract against Cullen. The letter of October 16th outlined and defined the things to be done on the part of Thompson to entitle him to obtain a conveyance of the real property, and the delivery to him of the bonds held and controlled by Cullen, and also the bonds that it was then contemplated should be purchased from Mr. Sullivan and his clients. The letter likewise specifically stated that, if Thompson failed to do the things specified in the letter, the bonds purchased from Sullivan should become and be the property of Mr. Cullen. Mr. Thompson's letter of October 25th accepted the terms, and

thereby, and by reason thereof, a completed contract existed between these parties and was recognized as being in existence, not only by Cullen and Thompson, but by Myrup after he obtained a half interest, and by the Bown Live Stock Company after it purchased the interest of Myrup.

There is nothing in the record to indicate, in the two communications between these parties, or otherwise, that Thompson had any right or authority to convey this property, or any part of it, free from the claims of Cullen. In other words, Thompson could only convey or transfer the property subject to the interest of Cullen, and subject to the conditions and provisions of the contract then existing between him and Cullen for the ultimate purchase of this property. The same is true of Myrup, and also of the Bown Live Stock Company. It is not shown that any other or different agreement or understanding existed between Thompson and Cullen. The provision of the letter of October 16th is that

"if the proposition is accepted by you there will be no personal liability on your part beyond the amount you contribute toward the purchase of the Sullivan bonds. If, in spite of all your efforts, you are unable to make a go of the district and the business you propose to run therein, the only advantage we derive from your undertaking is the bonds purchased with your money from Sullivan."

On the issues on this phase of the case the court found that about the 13th day of August, 1921, the defendant W. D. Thompson met E. W. Hulse and H. B. Cole at Green River, Utah,

"at which time negotiations were begun for the purchase by the said Cole and Hulse of the interest in the bonds and land which the Bown Live Stock Company had acquired from Myrup; that on or about the said day defendant Thompson took Cole and Hulse over the lands covered and referred to in the Cullen agreement, and discussed with Cole and Hulse the probable cost of repairing the irrigation system on said lands, and the probable cost of placing said lands upon a paying basis, and also the prospects of engaging in the sheep and live stock business on said lands."

The court's twelfth finding, immediately following the above, is as follows:

"The court further finds that during said conversation the defendant W. D. Thompson explained to plaintiffs H. B. Cole and said E. W. Hulse, when both Cole and Hulse were together, that he, the said Thompson, and the defendant Bown Live Stock Company, held and occupied said lands and claimed an interest in 538 bonds of the Green River irrigation district, held by the defendant Cullen at Chicago, and 787 bonds purchased from George M. Sullivan and his associates, subject to the terms and conditions of a written agreement with the defendant Cullen, which written agreement was in Salt Lake City in the possession of Wilson McCarthy."

That these findings of the court have support in the evidence cannot very well be denied, nor can it be successfully claimed that the weight of the evidence is against such findings. It thus appears from the court's findings that the appellants took their interest with notice of the claim of Cullen, and hence must have taken the interest in the bonds that they purchased subject to the interest of Cullen as stipulated in his letter of October 16th. Any right to claim the bonds or property was conditioned and contingent upon the performance on the part of Thompson or his assigns of the conditions contained in that letter. Admittedly the conditions stated in that letter were never met.

The bill of sale from the Bown Live Stock Company to Cole and Hulse does not by its terms purport to convey any interest other than such interest as the seller then had. The language of the bill of sale is: "All its interest in the certain bonds of the Green River irrigation district heretofore owned by Myrup and Thompson, now on deposit at Walker Bros.' bank, Salt Lake City, Utah, consisting of the interest therein formerly owned by A. M. Myrup and by him heretofore transferred to the said Bown Live Stock Company." The interest owned by the live stock company was the interest which A. M. Myrup had formerly owned, and which he owned and held under the terms and provisions of the Cullen letter of October 16, 1919. The word "all" must,

and did, signify only whatever interest the seller, the Bown Live Stock Company, at that time owned in the bonds in controversy. As we have attempted to point out, neither Mr. Myrup nor the Bown Live Stock Company had any other or additional interest than that granted to W. D. Thompson in Mr. Cullen's letter of October 16th. Whether Mr. Cole or Mr. Hulse were laboring under a misapprehension as to the interest they were purchasing is, in the absence of fraud, as we view this bill of sale, wholly immaterial. In the complaint there is no allegation of fraud on the part of any of the defendants.

Nor is there anything in the communication or order directed to Walker Bros., Bankers, and executed contemporaneously with the bill of sale, to indicate any intent on the part of the seller to convey or transfer any other or additional interest in these bonds than the interest the live stock company then owned. That communication advised the bank that the interest Mr. Myrup had with Mr. Thompson in these bonds had been transferred to the live stock company, and that "said Bown Live Stock Company has this day sold all of the said interest in said bonds formerly belonging to said A. M. Myrup to H. B. Cole and E. W. Hulse, who are now the owners thereof with Mr. W. D. Thompson." If it be conceded (and we are not holding otherwise) that Mr. Cole and Mr. Hulse made this purchase in the honest belief that they were buying one-half of the bonds of the irrigation district then on deposit in Walker Bros.' bank, such fact could be of no avail. They purchased the interest of the live stock company and no more. It is so specified in the bill of sale.

It is, however, strenuously contended on the part of appellants that it was testified to by Mr. Cole that he had not seen the contract between Cullen and Thompson at the time of the receipt of the bill of sale and payment of the purchase price; that he was not advised that Mr. Cullen claimed any interest in the bonds on deposit with Walker Bros.,

Bankers; that while he knew there was an option to purchase the lands, and that before acquiring title to the lands a payment of $50,000 was required on the part of the purchasers, he knew nothing of any claim of Cullen to the bonds which he (Thompson) purchased. We have not overlooked this testimony of Mr. Cole. However, we are unable to see how this testimony can help appellants.

The controversy, as it relates to the ownership of these bonds, is one between appellants and Cullen. Neither W. D. Thompson, A. M. Myrup, nor the Bown Live Stock Company, by any act or acts on their part, either jointly or severally, could convey or sell the interest of Cullen in these bonds. There is nothing proved to establish the fact that Mr. Cullen, affirmatively or otherwise, gave to any of his codefendants any authority to sell his interest in or right to possession of the bonds in controversy without first complying with the contract existing between him and Thompson. If it be conceded, which it is not, that the bill of sale from the Bown Live Stock Company to appellants, by the language used therein, purported to convey absolute title to these bonds and also the right of possession, in the absence of a showing or authority granted to make such a conveyance by Cullen, such sale could not avail against the claims of Cullen. Whether Mr. Cole or Mr. Hulse ever saw the letter of October 16th written by Mr. Cullen to Mr. Thompson cannot, and in our judgment does not, aid appellants in their claim to the bonds in controversy.

There is this to be said in addition, which, at least in the view of the writer of the opinion, is conclusive that no prejudicial error was committed by the trial court in discharging the jury and in refusing to submit the ■ issues of fact to a jury. Under the undisputed facts in this record as detailed herein, the trial court, treating the case as an action at law, should have granted defendant's motion for nonsuit. Likewise, still considering the action as one at law, it would have been the duty of the

court, at the close of the testimony in the case, to have directed the jury to return a verdict in favor of defendants.

JUDGMENT AFFIRMED, with costs.

THURMAN, C. J., and CHERRY and HANSEN, JJ., concur.

STRAUP, J. I dissent. I think this is a case of legal, and not of equitable, cognizance. It was tried twice; the first time before Judge Ritchie and a jury. It was tried and submitted by all the parties concerned as a law case. A verdict was rendered by the jury, determining the issues in favor of the plaintiffs and against the defendants, and a judgment entered thereon. On motion by the defendants, on grounds of insufficiency of the evidence to support the verdict and errors of law occurring at the trial, a new trial was granted. The case came on for retrial before Judge McCrea and a jury. The trial was entered upon and the case again regarded by all the parties as a law case. A jury was impaneled to try and determine the issues. Evidence was adduced by the plaintiffs in support of the allegations of their complaint and they rested. The defendants interposed a motion for nonsuit on grounds of insufficiency of the evidence to support the allegations of the complaint. In the course of arguments on the motion the court, on its own motion and not at the request of any of the defendants, ruled that the case was one in equity, and over the objections of plaintiffs dismissed the jury from further consideration of the case. The court thereupon overruled the motion for nonsuit and proceeded to further hear the case without a jury and as an equity case.

This ruling is one of the principal errors assigned by the plaintiffs. They contend that all of the issues were of legal cognizance and triable by a jury, and, if not all, at least some, of the necessary and material issues were so triable. To determine whether the case was law or equity requires an examination of the pleadings and the issues thereby

presented. Stripped of verbiage, the complaint is one wherein the plaintiffs allege ownership and right of possession of 494 bonds of the Green River irrigation district, and seek a recovery of them. It is alleged that in October, 1920, the defendants Myrup and W. D. Thompson purchased and became possessed of 987 of such bonds, and that each owned a one-half thereof, and that the bonds so purchased were deposited with the defendant Walker Bros., Bankers, for safe-keeping and subject to the joint written order of Myrup and Thompson; that later Myrup sold and delivered his one-half interest in such bonds, which was 494 bonds, to the defendant Bown Live Stock Company, which in turn, in 1921, sold and delivered such 494 bonds to plaintiff Cole and to E. W. Hulse, since deceased, whose estate was represented by Cecil Thompson and Stevenson as administrators of his estate; that the bank claimed no interest in such bonds, other than escrow charges; that the defendants Cullen and Cullen, agent, claimed "some right, title, or interest in and to a part of said bonds," but that they had no right, title, or interest in and to the 494 bonds purchased by the plaintiffs and alleged to be their property. It is not alleged that the other defendants claimed or asserted any right, title, or interest in or to the bonds, but that W. D. Thompson refused to join with the defendant Myrup and the plaintiffs in paying "storage charges" due the bank.

The prayer of the complaint was that Cullen and Cullen as agent be required to set forth what, if any, claim they had to such bonds, and that their claims be adjudged subject to the right and claim of the plaintiffs; that the bank be required to set forth whatever storage charges, if any, it had and that on the payment thereof it be required to deliver the bonds to the clerk of the court; that it be adjudged that the plaintiffs are the owners and entitled to the possession of 494 of such bonds, and if for any reason they cannot be delivered to them, that they have judgment against the Bown Live Stock Company for their value. The complaint thus in substance is nothing more than seek-

ing to recover possession of bonds alleged to be owned by the plaintiffs and entitled to the possession of them. In such respect, all that needed to have been alleged was that the plaintiffs were the owners of and entitled to the possession of the bonds, and that they were wrongfully withheld from them by the defendants. The verbiage in the complaint added nothing to the cause of action, nor changed the tenor of it.

The bank, in whose custody the bonds were, by its answer made no claim to them. It alleged that they were deposited with it in escrow under an agreement by the terms of which W. D. Thompson and A. M. Myrup purchased 987 bonds of the Green River irrigation district from one Sullivan and one Ellsworth, to be delivered to them upon the payment of $11,805, which sum had been paid, and all the terms and conditions of the escrow and agreement had been complied with; that thereafter the bonds continued to remain in the bank's custody; that thereafter several parties to the cause advised the bank of divers and conflicting claims to the possession of the bonds; that it itself had no claim on them, except for escrow charges, and offered to deliver them to the clerk of the court upon the payment of the charges.

The defendants Cullen and Cullen as agent, the principal defendants, denied all the material allegations of the complaint, except that they claimed an interest in the bonds. The denial was sought to be corroborated by verbiage of evidentiary character which it is claimed showed that the plaintiffs were not, but that such defendants were, the legal owners and entitled to the possession of the bonds. In such respect it in substance was alleged by such defendants that an agreement had been entered into by and between Cullen and W. D. Thompson, by the terms of which Cullen, upon the payment to him of $50,000, was to convey to Thompson about 1,000 acres of land and 538 bonds of the irrigation district held by Cullen, but no part of such bonds was held by the bank or was sought to be recovered by the plaintiffs;

that among other things Thompson was to secure the 987 bonds held by Sullivan and Ellsworth, of which consideration Cullen agreed to contribute and had contributed $3,500, and that Thompson was to pay the remainder of such consideration; that if Thompson did not carry out the agreement with Cullen, as by its terms provided, the bonds purchased from Sullivan and Ellsworth were to inure to the benefit of Cullen and to become his property; that Myrup became interested with W. D. Thompson in the enterprise, and that the bonds purchased and acquired by them from Sullivan and Ellsworth were purchased and acquired in pursuance of the contract between Cullen and Thompson; that Myrup sold his interest to the Bown Live Stock Company, which in turn sold its interest to Cole and Hulse, who "became interested and associated with Thompson in such deal"; and that the contract between Cullen and Thompson had not been carried out. It was upon such theory that Cullen claimed to own and was entitled to the possession of all of the bonds purchased by Thompson and Myrup from Sullivan and Ellsworth.

The answers of the other defendants, except Myrup and the bank, were in substance the same. The verbiage in the answers added nothing to the general denials. All in such respect alleged was mere matter of evidence, which could have been shown under the general denials. Whether the plaintiffs or Cullen were the owners and entitled to the possession of the bonds was dependent upon the legal rights of the parties, and not upon any equitable principles or doctrines. Nor were any such principles or doctrines invoked by any of the pleadings. That the plaintiffs, for a valuable consideration, about the sum of $6,500, had purchased 494 of such bonds from the live stock company is admitted. Cullen's right and title was dependent upon his contract with W. D. Thompson and an interpretation thereof, and as to whether the plaintiffs or their predecessors were parties or so related thereto as to be bound thereby. All that in no particular was dependent upon any equitable principles or

doctrines, but wholly upon legal rights, duties, and obligations, which largely involved the interpretation or construction of the contract between Cullen and Thompson, and as to whether the plaintiffs were parties thereto or otherwise bound thereby.

I thus am of the opinion that the action was one at law and triable by jury. Comp. Laws Utah 1917, § 6781; *Hughes* v. *Dunlap,* 91 Cal. 385, 27 P. 642; *Newman* v. *Duane,* 89 Cal. 597, 27 P. 66; *State ex rel. Hansen* v. *Hart,* 26 Utah 229, 72 P. 938; *Atkinson* v. *J. R. Crowe, etc., Co.,* 80 Kan. 161, 102 P. 50, 106 P. 1052, 39 L. R. A. (N. S.) 31, 18 Ann. Cas. 242.

The right of a trial by jury is not only a statutory but a constitutional right. 16 R. C. L. 13; *Eyak River Packing Co.* v. *Hughlen,* 143 Wash. 229, 255 P. 123, 257 P. 638. A denial of such right is per se prejudicial, because it is a denial of a trial of a cause and of issues as by the statute and the Constitution provided. Even the Legislature has no power to deprive any one of such right. Any statute which attempted such effect would be void, and a trial had thereunder would be of no binding effect. Courts may not, any more than the Legislature, disregard such constitutional provisions. Nor is a deprivation of such a fundamental right curable or cured by evidence. In such case the trial is a mistrial; it is no trial. The judgment herein is no better than had the court denied plaintiffs the right of any trial. Until a case is tried as by fundamental as well as statutory law provided, the issues of the case have not been determined by coram judice proceedings.

Further, it is a familiar rule that objections that a case is not of legal, but of equitable, cognizance must be timely interposed and at the threshold of the case. 3 C. J. 756. The decisions of this jurisdiction are in harmony with that. *Park* v. *Wilkinson,* 21 Utah 279, 60 P. 945; *Houston Real Estate Inv. Co.* v. *Hechler,* 47 Utah 215, 152 P. 726; *Naylor* v. *Jensen,* 38 Utah 310, 113 P. 73.

While the court did not, at the request or on motion of any of the defendants, rule the case as one of equitable and not of legal cognizance, and dismiss the jury, still, if the defendants waived the right to claim that the case was of equitable and not of legal cognizance, and proceeded with the trial of the case as though it were one at law, and not one in equity, may the court on its own motion disregard such waiver and estoppel on the part of the defendants, and try the case as one in equity if it in fact be such? As to that I am not so sure. I prefer to rest my opinion on the former view.

Nor am I in accord with the prevailing opinion as to the merits. As already observed, primarily Cullen's legal right to the possession of the 494 bonds sued for by the plaintiffs confessedly was dependent upon his contract with Thompson. Under it, which at most was but a preliminary draft or sketch of a proposed contract, he claimed that whatever bonds were acquired by Thompson from Sullivan and Ellsworth inured to Cullen's benefit, if Thompson did not carry out the terms of his contract. The claim in such respect is that, if Thompson carried out the contract, then Thompson was entitled to have and possess, not only all of the bonds purchased from Sullivan and Ellsworth, but in addition thereto 538 bonds held by Cullen himself. If Thompson did not do so, then all of the bonds purchased from Sullivan and Ellsworth became the property of Cullen.

Assuming that the preliminary draft, because accepted by Thompson, constituted a contract, and that the terms of it bear the interpretation placed upon it by Cullen, which is doubtful, yet the contract in no particular was assigned by Thompson to Myrup, or to the live stock company, or to the plaintiffs, nor did either assume to carry out its terms. The record shows Myrup became associated with Thompson in the enterprise, and that Myrup had knowledge of the terms of the contract between Thompson and Cullen. But no claim is made that Thompson assigned any part of the contract to Myrup, or that Myrup by any writing or

otherwise acquired any interest therein, or acquired any right in or to the contract which he could assert against Cullen. Nor did he otherwise become bound by its terms and conditions, so that any breach thereof or any failure to carry out the contract could by Cullen be asserted against Myrup. All that more particularly is true as to the live stock company, and still more forcibly true as to the plaintiffs.

The plaintiffs thus by purchase show title and right of possession of the 494 bonds sued for; that Cullen, who is the real defendant, showing as against the plaintiffs no right or title therein, I am of the opinion that the plaintiffs, who paid about $6,500 for such bonds so purchased by them in good faith from the live stock company are entitled to prevail; and that thus the judgment should be reversed, and the cause remanded for a new trial.