[No. 15700.   Department Two.   April 8, 1920.]

## BERNHARD KAHAN, *Appellant,* v. ALASKA JUNK COMPANY *et al., Respondents.*[1]

CORPORATIONS (180)—MAJORITY STOCKHOLDERS—CONTROL OF COMPANY.  A majority stockholder has a right to control the business policy of the company if he acts in a reasonably competent and efficient manner.

CORPORATIONS (216, 218)—RECEIVERS—APPOINTMENT—GROUNDS— CRIMINAL ACTS.  A receiver will not be appointed of a solvent corporation because of dishonest or criminal acts committed by a majority stockholder in control of its business, unless the evil acts are systematic and habitual and a part of its general business, and injunctive relief would not afford a complete remedy.

SAME (216, 218).  A minority stockholder, seeking the appointment of a receiver in such a case, must show that he has exhausted all other remedies and tried to stop the criminal acts.

Appeal from a judgment of the superior court for King county, Sheeks, J., entered November 4, 1919, in favor of the defendants, in an action for equitable relief, tried to the court.   Affirmed.

[1] Reported in 189 Pac. 262.

*Preston, Thorgrimson & Turner, Piles & Halver-stadt,* and *Jones, Riddell & Brackett,* for appellant.

*Reynolds, Ballinger & Hutson* and *Donworth, Todd & Higgins (Hyman Zettler,* of counsel), for respondents.

Bridges, J.—For many years prior to 1918, the appellant and the respondent Falk, as copartners, had been engaged in the junk business in the city of Spokane, Washington, and for a somewhat similar period, the respondent Schwartz had been engaged in a like business in the city of Seattle. In June, 1918, the agreed value of the assets of the firm of Kahan and Falk was $116,000, and the agreed value of the assets of the business belonging to Schwartz was $498,000. For some time prior to 1918, these parties had discussed a consolidation of their assets and energies. On May 6, 1918, a preliminary written consolidation agreement was executed by the parties. On June 12, 1918, a final and full agreement was entered into which took the place of the preliminary agreement. All of the parties to this action, except the Alaska Junk Company and the bank, were parties to this final agreement. That instrument provided that a corporation should be created under the name of the Alaska Junk Company, with a capital stock of $500,000, consisting of 5,000 shares, each of the par value of $100. The parties subscribing to such capital stock were as follows: Frank Schwartz, 3,838 shares; Louis Dulien, 1 share; Mayo Cahen, 1 share; Bernhard Kahan, 580 shares; and Isidore E. Falk, 580 shares. Schwartz was to turn over to the corporation all of his assets, for which the company was to issue him the shares for which he had subscribed, and pay him the sum of $24,200 in cash out of money subsequently earned by it. Dulien and Cahen were to pay cash for their stock.

Kahan was to pay for his 580 shares by making over to the corporation his undivided one-half interest in the business of himself and his partner, and Falk was to pay for his shares in a similar manner. It was further provided that Schwartz should sell to the appellant 620 of his shares for $62,000, and that such shares should be made out in the name of the appellant and be deposited in escrow with the respondent Union National Bank, of Seattle. This purchase price, with certain interest, was to be paid within fifteen years. Schwartz was to have the power to vote such stock till paid for. Certain provisions were made whereby any dividend declared upon this stock held in escrow, and upon the stock for which the appellant subscribed, was to be delivered to Schwartz and applied on the purchase price of the 620 shares. Schwartz also agreed to sell Falk a similar number of his shares on substantially the same terms as he had agreed to sell to appellant. The respondent Dulien also agreed to purchase from Schwartz 1,200 shares of stock upon terms not necessary to here detail. The contract further provided that, if any party desired at any time to sell his stock or any part of it, he should first offer it to the other stockholders. It was further agreed that Schwartz should be made the president of the corporation, Falk the vice-president, appellant the treasurer, and Dulien the secretary, and that each should give his time to the affairs of the company and receive $500 each per month for compensation.

Pursuant to this agreement, the Alaska Junk Company, a corporation, was created and its stock issued, and each of the parties made over to the corporation the assets according to the agreement. The new company then commenced to transact business, and continues so to do.

On March 11, 1919, the appellant commenced this action. The complaint alleged most of the facts which we have heretofore given, and further alleged that Schwartz, in order to induce the appellant to enter into the business arrangement heretofore mentioned, made fraudulent and untruthful representations to appellant concerning contracts which he, Schwartz, then had for the sale of junk and the price at which the same had been sold, which misrepresentations were to the appellant's great material injury, and that Schwartz had fraudulently misrepresented to the appellant the value of his business and his assets; other false representations are alleged to have been made by Schwartz. Appellant says he relied upon such false and fraudulent representations and became a member of the said corporation as a result of such reliance and not otherwise; that Schwartz had a majority of the capital stock of the corporation and had control of its business and of its board of directors, and caused the business to be carried on without consulting the appellant, and in a manner contrary to his wishes and contrary to the material welfare of the company, and caused such business to be transacted in a wrongful and deceitful manner, and that such corporation, under Schwartz' management and control, was habitually and systematically guilty of thievery and robbery, and its business was systematically criminal; that it was the habit and custom, when carloads of scrap iron would arrive unweighed at the corporation's place of business in Seattle, to remove from such cars several tons of material, and then cause the cars to be weighed and settlements to be made based upon such false weights; that it was also the habit and custom of the company, when cars loaded with scrap iron, and which had previously been weighed, arrived at the place of business of the junk company, to remove quantities of

material therefrom, and then forward the remainder of the same car to purchasers as of the original tonnage. Other like fraudulent practices are alleged to be indulged in by the corporation under the direction and control of respondent Schwartz. It was alleged that such dishonest dealings were carried on systematically and had become and were a part of the business, all to the danger of the solvency of the company. It was further charged that the appellant objected to such fraudulent practices but, being a minor stockholder, has been unable to stop them and, as such stockholder, is compelled to have the appearance of participating in such wrongful and fraudulent conduct. He prays that the Union National Bank be restrained from doing anything with the capital stock so held by it in escrow; that a receiver be appointed; that the corporation be dissolved, and that its assets be distributed among the stockholders.

The answers of the various defendants are substantially general denials as to all wrongdoing. The trial court, after a full hearing, made a judgment dismissing the action. The plaintiff has appealed.

The questions involved are largely those of fact. We have conscientiously read all of the abstract of the testimony, consisting of more than two hundred pages, and much of the statement of facts, of nearly six hundred pages. In our opinion, the record fails to show that Schwartz was guilty of any material misrepresentations of fraud in bringing about the so-called consolidation of the business of the appellant and himself. Before going into this corporation the appellant not only had ample opportunity to examine all of the business affairs of Schwartz, but actually did make such examination. There is very little testimony tending to show that the property which Schwartz turned into the corporation was of less value than the amount

agreed upon between the parties. We are convinced that the appellant went into this business because he thought it would be to his material advantage so to do, and that he went into it with his eyes open and all the cards on the table. To a very large extent, Schwartz has controlled, and does now control, the business affairs and policy of the company, and it may be that he had not consulted with the appellant regarding the conduct of the business to any considerable extent; but it must be remembered that Schwartz' interest in the corporation is several times greater than the interest of the appellant, and that Schwartz was and is, by great odds, the largest stockholder. Such being the case, he would have a right to dictate the business policy of the company so long as he did so in a reasonably competent and efficient manner. The law has always recognized the right of a majority stockholder of a corporation to control its business and affairs, and a court of equity will never interfere with such control except for the very best of reasons. The testimony shows that this corporation is thriving and that it is neither insolvent nor in danger of insolvency. As a matter of fact, it has made money most, if not all, of the time since its organization.

The chief thing in this case which gives us pause is the charge that the respondents, other than the bank, have caused, and still do cause, the business affairs of the corporation to be carried on in a dishonest and criminal manner. Much testimony, for and against this charge, was presented.

If it be conceded that a court of equity has power to appoint a receiver of a corporation which is a going and prosperous concern and is neither insolvent nor in danger of insolvency, simply because it does things which are dishonest, to what extent must such practices go before such power will be exercised? Cer-

tainly not for one or three or five such acts out of hundreds or thousands of business transactions. Where should the line be drawn? How many of such dishonest acts are necessary before the court will appoint a receiver and wind up the affairs of the company? Receivership and consequent dissolution of a corporation is at best an exceedingly harsh remedy and will be resorted to by the courts only in extreme cases, and most generally only for the protection of innocent creditors. If a corporation does or threatens to do some *ultra vires* act, the milder remedy of injunction will prevent the evil. If it is doing, or threatening to do, some act that is morally wrong or in violation of the criminal statutes, such as permitting gambling, or racing, or a house of prostitution on its premises, and other similar and somewhat isolated acts, injunction is a complete remedy. *Cope v. District Fair Association*, 99 Ill. 489, 39 Am. Rep. 30; *Sidway v. Missouri Land & Live Stock Co.*, 101 Fed. 481; *Feess v. Mechanics' Bank*, 84 Kan. 828, 115 Pac. 563; *Taylor v. Decatur Mineral & Land Co.*, 112 Fed. 449; *People's Inv. Co. v. Crawford* (Tex. Civ. App.), 45 S. W. 738; *Empire Hotel Co. v. Main*, 98 Ga. 176, 25 S. E. 413.

The complaint alleges that Schwartz has "caused said Alaska Junk Company systematically to engage in thievery and robbery as aforesaid; to engage in systematic violation of the criminal laws of the state." We think that is the line. The evil practices must be systematic and habitual and so interwoven as to become a part of the general business. If so, then we are not called upon to determine whether there have been isolated or occasional dishonest or criminal acts, but we are called upon to determine whether the business has been, and will continue to be, carried on in a systematically dishonest manner. The law recognizes that most men do business honestly and fairly, and that

charges to the contrary should, and in the very nature of things must, be clearly and convincingly proven. Here is involved the accumulation of the parties for years; here is a large and prosperous corporation and a perfectly legitimate business which has creditors who are depending on the business of the company being carried on through its corporate officers; here, indeed, much is at stake. We should be, we must be, sure of our ground before we tear down this structure.

It would serve no useful purpose to here undertake to review in detail the testimony. The most damaging portion of it is with reference to the alleged practice of removing from cars, coming in without having previously been weighed, a portion of the contents and then having the cars weighed and making settlement on such weight; and also in removing a part of the contents of cars coming in, which have been previously weighed, and then selling the car to others according to such previous weight. The testimony shows that a very small percentage of the cars came in without having been previously weighed. The respondents deny this charge about unweighed cars with as much vigor as appellant has made it. They seem to admit that, when weighed cars come in, it was and is a practice to remove a part of the material from all or a part of the cars, but they claim that only a certain class of materials, which would not be serviceable to the person to whom the car had been sold, would be removed, and that additional materials, probably of lesser value, would be put on the car to make up the weight of that which had been removed. Whatever may be said against this confessed way of doing business, it is not necessarily dishonest, and the proof that it is dishonest must be convincing. Schwartz, against whom most of the charges are made, started a very small junk business in Seattle some twenty-five or

thirty years before the forming of this company and has built up an extensive and prosperous business. The business of the present corporation, under his management and control, is a growing and prosperous one. He and his corporation have good and extensive credit. Almost no one who has done business with the company has complained; so far as the testimony shows, its way of doing business has not lost it a customer. As said by the trial judge: "These facts seem rather inconsistent with the idea that the business has been or is conducted systematically as charged." The conflict of testimony is great in many instances and cannot be reconciled. It is largely a question of credibility between witnesses. The trial court found that the appellant had not made a case showing a systematic and habitual dishonesty. We have before us only the spoken words; he had before him those who spoke the words. In a case such as this, he was better able to pass on the credibility of the witnesses than we are. The record shows that the learned and experienced trial court considered the testimony in a most careful, dispassionate and painstaking manner. Giving to the findings of the trial court the consideration to which they are entitled, and after a careful reading of the record, we do not find ourselves convinced that the appellant has made a case showing, as alleged, an habitual and systematic dishonesty in the business dealings of the corporation.

But there are other features of the case which greatly impress us. It cannot seriously be considered that it is necessary to appoint a receiver for the protection of appellant's property rights; the proof shows but little prospect of its loss. If the corporation has been and is likely to be guilty of frauds and dishonesty, whether to a small or to a considerable extent, appellant can complain to a court of equity only because he

is bound to have the appearance of participating in them. But when he asks an extraordinary remedy for such an unusual cause, he must show that he has exhausted all other remedies. We do not think he stands in this position. He has complained only to Schwartz. He has not gone to the employees who have been doing these alleged dishonest acts and tried to stop the evil there; he has not sought the assistance of the strong arm of the criminal law nor complained to those charged with the enforcement of that law; the corporation has a few well known and extensive customers, but he has not gone to them, nor warned them, nor sought their assistance; he has not laid his complaints before the board of directors of the corporation. It is true the doing of these things might injure the business and credit of the company, but certainly not more so than the bringing of this suit and its trial.

For all these reasons, we feel that the judgment must be affirmed. It is so ordered.

HOLCOMB, C. J., TOLMAN, FULLERTON, and MOUNT, JJ., concur.