Louis Dulien, *Appellant*, ·v. Frank Schwartz, *et al.*, *Respondents.*[1]

*Riddell, Brackett & Fowler,* for appellant.

*Tucker & Tucker* and *Hyland, Elvidge & Alvord,* for respondents.

Beals, J.—Plaintiff Louis Dulien is a nephew of defendant Frank Schwartz, who for many years has been engaged in the junk business in Seattle. Defendant Schwartz incorporated his business as Alaska Junk Company during the year 1918, retaining eighty per cent of the capital stock for himself, and having been at all times since the principal stockholder of the

[1]Reported in 290 Pac. 834.

corporation (See *Kahan v. Alaska Junk Company*, 111 Wash. 39, 189 Pac. 262).. In this opinion Frank Schwartz will be referred to as the defendant or respondent, and defendant Alaska Junk Company will be referred to as the corporation.

At the age of eleven years plaintiff became a member of defendant's household, and after his graduation from grade school, went to work for defendant in the junk yard, where he was employed for approximately eleven years, or until the business was incorporated, having a drawing account of eight dollars per week. Just prior to the organization of the corporation, defendant, upon his books, credited himself with ten thousand dollars, and plaintiff with five thousand dollars, as salary earned but unpaid, which obligations were assumed by the corporation. At this time defendant was made president of the corporation, and plaintiff general manager, each, by resolution of the board of trustees, to receive a salary of five hundred dollars per month.

The corporation being unable to pay plaintiff this salary, he drew only enough to cover his living expenses, and from time to time he took notes of the corporation for the balance of salary due to him. Plaintiff also, from time to time, loaned money to the corporation out of his share of the profits of another business in which plaintiff, defendant, and a third party were partners; it being customary for both plaintiff and defendant, on receiving dividends from the other business, to loan a considerable portion thereof to the corporation.

During the winter and spring of 1922, the corporation was in financial difficulties. Sufficient allowance had not been made by the management for the very great decrease in the value of junk which followed the close of the war in 1918; and it is evident that suffi-

cient effort had not been made to reduce the large accumulation of material which had been purchased at high prices during, and even after, the war period. The corporation was indebted in large sums and owed plaintiff approximately $13,000, as evidenced by its promissory notes; and was debtor to him upon an open account in the sum of approximately $9,000. Its assets had decreased apparently from between $300,000 and $400,000, if not a higher figure, to about $125,000, and its credit was seriously impaired. Plaintiff and defendant had, for a long time, disagreed radically over the business policy to be pursued in the management of the corporation and its affairs, and plaintiff evidently determined to leave the corporation's employ.

During the early summer following, defendant consulted John B. Hart, Esquire, a practicing attorney of many years standing, in an attempt to come to some agreement with plaintiff concerning matters which were in dispute between them. Mr. Hart discussed the situation with plaintiff and, as the result of their conferences, the corporation executed two additional notes in plaintiff's favor, one for $9,000, the other for $735.17, which latter note was not embraced within the agreement hereinafter mentioned, and was subsequently assigned by plaintiff to a third party, who brought suit thereon against the corporation and recovered judgment (*Humphrey v. Alaska Junk Co.,* 149 Wash. 155, 270 Pac. 302).

July 29, 1922, the parties met at Mr. Hart's office, and plaintiff then delivered to Mr. Hart the notes of the corporation which had been drawn by it to his order, endorsing the notes in blank, and executing a written assignment thereof, which assignment also covered his shares of stock in the corporation, in the following form:

Seattle, Wn., July 29, 1922.

For value received, I hereby sell, assign and deliver to Frank Schwartz the following described promissory notes:

(1) One promissory note given by Alaska Junk Co.,
     December 9th, 1920 .............................. $5,100.00
(2) One promissory note given by Alaska Junk Co.,
     September 9th, 1920 ............................. 4,000.00
(3) One promissory note given by Alaska Junk Co.,
     September 14th, 1920 ............................ 1,000.00
(4) One promissory note given by Alaska Junk Co.,
     September 24th, 1920 ............................ 1,212.00
(5) One promissory note given by Alaska Junk Co.,
     September 24th, 1920 ............................ 1,212.00
(6) One promissory note given by Alaska Junk Co.,
     July 29th, 1922 ................................ 9,000.00

Also for the same consideration I hereby sell, assign and transfer to Frank Schwartz the following shares of the capital stock of the Alaska Junk Co., to wit:

Certificate No. 5 for one share,
Certificate No. 15 for one hundred shares.

LOUIS DULIEN.

Plaintiff also, at the same time, in Mr. Hart's office, signed the following letter directed to Union National Bank:

"Seattle, Wash.
July 29, 1922.

"Union National Bank, (formerly Union Savings and Trust Co.)
"Seattle, Wash.
"Gentlemen:

"Under date of July 25, 1918, a certificate of stock No. 4 for 1200 shares of the capital stock of the Alaska Junk Company, issued to Frank Schwartz and assigned by him to Louis Dulien (together with other stocks) was deposited with you as an escrow holder, subject to the conditions mentioned in the agreement existing between Frank Schwartz, myself and others, dated June 12, 1918, a copy of which said agreement being also deposited with you as an escrow holder.

"This is to notify you that I have and do hereby transfer to Mr. Schwartz all interest which I may have in said certificate of stock, and I do hereby authorize the Alaska Junk Company, if necessary, to issue a new certificate of stock to him or on his direction.

"I further authorize you to deliver, as an escrow holder, said certificate of stock to Mr. Schwartz, the said contract, in so far as Mr. Schwartz and myself

are concerned, having been this day mutually cancelled and annulled by him and by myself.

"Very respectfully yours,
"(Signed) Louis Dulien."

At the same time, plaintiff and defendant executed a written agreement to the effect that their various disagreements were settled and adjusted, and that each of the parties acquitted and discharged the other from all causes of action whatsoever. At this time it was agreed that plaintiff would resign the offices which he held in the corporation (he signing his resignation at the time he executed the other documents hereinabove referred to), and continue to work for the corporation on salary. This arrangement was continued until February, 1923, when plaintiff left the corporation's employ, and shortly thereafter went to New York City.

This action was commenced during the month of April, 1926, plaintiff alleging his relationship to defendant, his employment by and his association in business with defendant, and that because of their relationship and business association plaintiff was accustomed to accept the advice and follow the direction of defendant, in his business affairs; that, on and prior to July 29, 1922, plaintiff had received notes from the corporation aggregating $21,524, payable to plaintiff's order; that the corporation was solvent and able to pay these notes according to their terms; that, during the month of July, 1922, defendant represented to the plaintiff that the corporation desired to borrow money from one or more banks in the aggregate sum of $35,000, and that, in order to procure a loan in such an amount, it would be necessary that the corporation show a favorable financial statement; that, with plaintiff's notes outstanding and showing upon a financial statement, the financial condition of the corporation

would not be favorable, and that, upon such a showing, it was improbable that the desired loan could be procured; that, if plaintiff would endorse and assign his notes to defendant and leave the same in possession of John B. Hart (who was named as a defendant in the action) and would agree that these notes should thereafter be subordinate and inferior to any notes or obligations made or incurred by the corporation upon the faith of a financial statement from which plaintiff's notes were omitted, the corporation would be able to make a statement of its finances which would enable it to borrow the money needed to carry on its business, and that, after the payment of such indebtedness by the corporation plaintiff's notes would be returned to him; that plaintiff, acting upon these representations on the part of defendant and relying upon defendant and being induced by the relationship existing between them, acceded to the request of defendant and endorsed the notes and delivered them to Mr. Hart, executing as part of the transaction the assignment hereinabove set forth.

Plaintiff further alleged that the assignment of the notes and stock was without any consideration and was made solely to accomplish the purpose set forth by plaintiff in his complaint. Plaintiff further alleged that defendant had, in fact, no intention of causing the corporation to borrow money; that no money was in fact borrowed, nor was any effort made to effect such a loan; that plaintiff thereafter discovered these facts and demanded from Mr. Hart the return of the notes, and that Mr. Hart refused to comply with this demand until previously authorized thereto by defendant; that plaintiff demanded of defendant a release of all claim of ownership or interest in these notes, with which demand defendant refused to comply.

Plaintiff concluded his complaint with an allegation

that the corporation was indebted to him in a sum equal to the face value of the notes, with interest, and prayed that John B. Hart be required to surrender the notes to him; that it be decreed that none of the defendants have any interest therein; and that the plaintiff have judgment against the corporation upon the promissory notes, and for such other and further relief as might appear to be just and equitable in the premises.

It appears that John B. Hart prepared and verified an answer to this complaint, but died before filing the same and before the trial of the action. Mr. Hart's executors filed in the case a disclaimer, alleging that they claimed no interest in the notes, which they filed in the office of the clerk of the court, asking that the ownership thereof be determined and the notes awarded to the person entitled thereto.

Defendant Schwartz and the corporation answered, admitting the original indebtedness of the corporation to plaintiff and the execution of the promissory notes in plaintiff's favor, and denying the other material allegations of plaintiff's complaint. The defendants also set forth in their answer three affirmative defenses; the first, to the effect that, prior to July 29, 1922, plaintiff and defendant had disagreed over certain matters connected with the business of the corporation, and that defendant had employed John B. Hart to negotiate with plaintiff with a view towards effecting a settlement of their differences; that, on the date last mentioned, a full and complete settlement of all matters in controversy between plaintiff and defendant was effected, and as part of such settlement, plaintiff endorsed the notes and delivered them to defendant, and executed the assignment hereinabove set forth and delivered the same to defendant, and also executed and signed a written agreement, acknowledg-

ing full and complete settlement of all matters in controversy between the parties; and that defendant then delivered all of these papers to Mr. Hart, as attorney for defendant and the corporation.

As a second affirmative defense, defendants alleged the execution by the corporation of the note for $735.17 in plaintiff's favor; that this note was delivered as part of the settlement between the parties; and that plaintiff thereafter assigned this note to one Bernice Humphrey, and caused his assignee to bring a suit thereon against the corporation and enforced payment of the note, thereby electing to ratify and confirm the settlement.

As a third affirmative defense, defendants pleaded that plaintiff's action was barred by the statute of limitations in that the same had not been instituted within three years from the date the same accrued.

Plaintiff in his reply denied the material allegations contained in these three affirmative defenses.

In so far as the late John B. Hart was concerned, the action had abated upon his death, plaintiff having failed to request the substitution of Mr. Hart's personal representatives as defendants. Upon the issues so made up the action proceeded to trial before the court without a jury, the trial resulting in findings of fact and conclusions of law in favor of the defendants, and from a judgment in defendants' favor dismissing the action, plaintiff appeals.

Appellant assigns error upon the making by the trial court of one of the findings of fact; upon the entry of two of the conclusions of law; upon the failure of the trial court to make findings of fact and conclusions of law as proposed by appellant; upon the denial by the court of appellant's motion for a new trial; and upon the entry of the decree dismissing the action.

■ An examination of the record discloses the following situation: Appellant, for years prior to the date he left the employ of the corporation, had been in serious disagreement with respondent over the policy to be followed in carrying out the corporation's business. Appellant complained because respondent promised to procure funds for use by the corporation in its business, and continually failed to make good his promises, to the infinite disgust of appellant, who finally abandoned his position with the corporation, and formed other business connections. Because of disagreements with appellant, respondent engaged the services of Mr. Hart to effect some adjustment with appellant, and as a result of the negotiations conducted by Mr. Hart, the arrangement hereinabove outlined was made, and the documents referred to were signed by the parties. Appellant attacks this settlement, claiming, as above set forth, that he was induced to enter into the same by false and fraudulent representations on the part of respondent, and that the assignment of the notes was without consideration and void. The burden of proving his case rests upon appellant, who is seeking to set aside and have declared void a series of instruments which are, as to their terms, simple, straightforward and unambiguous.

Some of the testimony introduced supports, to a certain extent, appellant's contentions. For example, March 10, 1923, appellant wrote Mr. Hart a letter in which appears the following:

"Sometime ago, the writer and Mr. Schwartz were in your office and there was left with you by the writer, some notes. These were to be held by you until certain matters were adjusted between the writer and Mr. Schwartz. These adjustments were never carried out by Mr. Schwartz, and I, therefore, make demand upon you to return these notes to me immediately. I trust you will comply with my request at once."

Mr. Hart mailed a copy of this letter to respondent under cover of a letter of his own, in which Mr. Hart stated: "I think the matter requires your prompt attention." Mr. Hart also wrote appellant under date March 12, 1923, in which he stated:

"I recall that certain notes, stocks and agreements and etc., were left with me by you and Mr. Schwartz. As I understood it, at the time, these were to be delivered to Mr. Schwartz later on by me. I have taken the matter up of the delivery and also of your demand on Mr. Schwartz by letter today."

September 9, 1923, appellant wrote Mr. Hart a letter, in which he said:

"I just thought I would drop you a line to see if you were in a position to return to me the notes left with you August last year and which I wrote to you about a few times already, and which I asked you to return to me on account of Frank Schwartz not having complied with certain arrangements. At any rate, if you are not in a position to return said notes to me, under no circumstances are you to turn the notes over to Mr. Schwartz.

"Trusting to hear from you promptly . . ."

Appellant also wrote other letters to Mr. Hart concerning these notes, and requesting that they be delivered to him.

On the other hand, July 30, 1922, the day after the parties met in Mr. Hart's office, appellant wrote Mr. Hart the following letter:

"As I am leaving town tóday on my first official trip on my new job, I will not be in town Monday and for a few days more, I thought that it would be proper for me to have a receipt from Mr. Schwartz for the notes and stock certificates. Of course it may not be essential but I would prefer to have one and would thank you to. get one when turning them over to Mr. Schwartz and mailing it to me if you are going to be out of the city any length of time. I did not think to

mention it to you Saturday, although I had it in mind to do so. . . ."

December 24, 1924, appellant wrote to Mr. Hart a letter in which he says:

"I wrote you November 18th asking you about the standing of the conditions pertaining to the notes due me from The Alaska Junk Company that you are holding, but up to the present time have not heard anything from you. Would appreciate having a few lines letting me know how things are coming along. . . ."

Appellant's letter to Mr. Hart of November 18th does not in fact ask anything concerning the notes, but merely refers to the fact that appellant expected that he would be in Seattle soon and would then "go into the matter of the notes."

What the "certain arrangements" were with which appellant contended that respondent had not complied, or what were "the conditions pertaining to the notes," does not appear from any of the writings which were admitted in evidence. Appellant, of course, contends that the arrangements and conditions to which he referred were the borrowing of money to be used in carrying on the business of the corporation. During the years 1923 and 1924 appellant was living most of the time in New York, and was, therefore, at some disadvantage in attending to his business affairs in Seattle.

Appellant's letter to Mr. Hart under date July 30 seems rather inconsistent with appellant's theory of the transaction consummated the day before in Mr. Hart's office, as the letter refers to the delivery of the notes and stock certificates to Mr. Schwartz, simply asking that Mr. Hart procure a receipt therefor. It must be remembered that, after the meeting in Mr. Hart's office, appellant continued in the employ of the corporation, working with respondent for over six

months and knew that, during this period, respondent had not complied with what he testifies was respondent's agreement to borrow money for the use of the corporation. Concerning this matter, appellant, on cross examination, testified as follows:

"A. I turned the notes over to Mr. Hart on the statement of Mr. Schwartz that if these notes could be arranged so or handled some sort of way by himself that he could get a loan or get credit. Q. At the bank. And you worked down there following that until the first of February following? A. Yes, sir. Q. And you at that time knew that Schwartz hadn't changed his habits about running his business or his methods about running his business? A. He hadn't what? Q. That Schwartz had not changed his method of running the business? A. Apparently not, no. Q. And that is the reason you left? A. That is the reason I left, yes, certainly. Q. You left because there had been no money got into the business, and you knew that the way Schwartz was going to run that business it wouldn't be profitable, that is the reason you quit, is it? A. He would never get the money he said he was going to get was the main reasons. Q. And you knew that he didn't get the money, hadn't got the money up to that time? A. Yes, sir. Q. And you knew at that time that he had made no effort to get the money, that is, you believed that? A. Yes, sir. Q. And you knew at that time that he hadn't kept his agreement with you and didn't intend to keep his agreement with you without trying to get the money, that he intended to run that business just as he had always run it, accumulate the stock and not selling anything? A. The main reason I left on February 1st was he hadn't carried out his agreements with me to separate the business and make two branches out of it and leave me run one end of it and he run the other end of it, that is the reason I left. Q. The reason you talked with Schwartz was that he would separate the business and you would run these two businesses and you run one end of it and he the other? A. Yes, sir. Q. And at that time he hadn't carried out that agreement, you knew that? A. Yes, sir. Q. You knew it abso-

lutely? A. Yes, sir. Q. And you knew absolutely on the 10th day of March, 1923, when you wrote to John Hart telling him Mr. Schwartz hadn't lived up to his agreement, didn't you? A. Yes, sir. Q. And you had known it from the first day of February till the 10th day of March? A. Yes, sir. Q. You knew that Schwartz then had violated the agreement that he made with you under which you had surrendered these notes and left them up there with Hart at that time? That was the reason for your quitting, because you knew he had violated that agreement with you, didn't you. A. Yes, sir.''

Much of the testimony introduced on behalf of appellant, and relied upon by him for proof supporting the allegations of his complaint is, also, in many particulars extremely unsatisfactory. The same is true of the testimony on behalf of respondent, but appellant cannot prevail because of the weakness of his opponent's case; he must prevail, if at all, upon the strength of his own case. He must adduce, in support of his own contentions, evidence which complies with the rules of law in regard to the degree of proof required to establish that solemn contracts, fair and unambiguous on their face, were, in fact, induced by fraud and, because of such fraud, should be set aside; or, on the other hand, were without consideration and therefore void.

In the case at bar, counsel for each side are able to find many flaws in the evidence introduced by the opposing party and in the testimony of adverse witnesses, and it might easily be supposed that all of the facts upon which the settlement between the parties was based were not during the trial disclosed by either party. The case, however, must be decided upon the record as made in the court below.

It is difficult to comprehend why such a complete and elaborate settlement between the parties was necessary if no end was to be accomplished other than

that alleged by appellant. The assignment of the corporate stock, the release of the stock which was in escrow, the agreement reciting that "a full and complete acquittance and discharge is herewith given from one party to the other", and that each party released the other from all "causes of action existing or supposed to exist by one against the other", strongly indicates a more complete and comprehensive settlement than the mere setting up of à piece of stage machinery which would permit the corporation to borrow money and make the loan a claim prior to that of appellant upon his notes.

It is not easy to understand how appellant, after such serious and radical disagreements with respondent as those concerning which appellant testified, would have relied upon respondent, as appellant says he did, and would have signed all the papers which appellant admits he signed, trusting respondent to borrow money for the use of the corporation's business, when appellant testifies that he and respondent had for years differed in their ideas as to the management of the business and respondent had never yielded his own views but had always insisted upon having his own way.

The record in this case is extremely voluminous. The trial court found that the settlement hereinabove referred to between appellant and respondent constituted in fact a full, complete and final settlement between the parties, and that the notes and other papers then became the property of respondent, and were by him left with Mr. Hart.

We are satisfied that appellant failed to bear the burden which rested upon him to prove the fraud on the part of respondent which appellant alleged, or to show that for any other reason the assignment of the notes which he executed was void or not now binding

upon him, and that the judgment of the trial court dismissing appellant's action was correct.

This conclusion renders it unnecessary to discuss the other propositions argued by respondents to the effect that the agreement alleged by appellant was of such a nature that it in itself constituted a fraud, and that the parties being in *pari delicto,* a court of equity would afford appellant no relief in any event; or, on the other hand, that appellant's action is barred by the statute of limitations.

The judgment appealed from is affirmed.

MITCHELL, C. J., PARKER, MILLARD, and TOLMAN, JJ., concur.

[No. 22375. Department One. August 19, 1930.]